273 So.2d 516 (1973)
Ory J. HOOTER d/b/a O. J. Hooter Furniture Company
v.
Richard WILSON.
No. 52251.
Supreme Court of Louisiana.
February 19, 1973.
*517 Blake G. Arata, City Atty., Michael A. Starks, Asst. City Atty., for defendant-applicant.
Clarence E. Strauch, Metairie, for plaintiff-respondent.
Richard F. Schubert, Sol. of Labor, George T. Avery, Regional Sol., Scott H. Strickler, Atty., Dallas, Tex., for amicus curiae, James D. Hodgson, Secretary of Labor, U.S. Dept. of Labor.
BARHAM, Justice.
We granted certiorari to review a Court of Appeal judgment, 256 So.2d 808, affirming the judgment of the First City Court of New Orleans in favor of plaintiff and against defendant under a declaration that the increased exemption from garnishment provided in R.S. 13:3881 as amended by Act 242 of 1970 could not be applied retroactively.
The plaintiff obtained a judgment on an open account against the defendant for merchandise purchased in the amount of $305.77. This judgment was rendered *518 March 6, 1968. In a garnishment proceeding under writ of fieri facias judgment was rendered October 16, 1968, ordering the City of New Orleans, the employer of the defendant Richard Wilson, to pay to plaintiff 20 per cent of the defendant's wages, provided "said payments, however, shall never encroach upon the amount exempt by law, namely the sum of ONE HUNDRED DOLLARS per month", and subject to the payment of any prior garnishments. At the time of the garnishment judgment against the City of New Orleans, R.S. 13:3881 made exempt from seizure under any process 80 per cent of the wages of the debtor and provided "but in no case shall this exemption be less than one hundred dollars monthly". From June to September, 1970, the garnishee, the city, paid plaintiff from defendant's wages in accordance with the judgment. In October the garnishee discontinued withholding 20 per cent of the defendant's wages, relying upon the new provision of R.S. 13:3881 under its amendment by Act 242 of 1970,[1] which was certified as emergency legislation and became effective on July 2, 1970.
The provision of the 1970 act pertinent to the case before us is the setting of the new exemption of earnings at 75 per cent but providing that in "no case shall this exemption be less than at the rate of seventy dollars per week of disposable earnings". On the date the city terminated the payments under the garnishment judgment, the defendant's disposable earnings were approximately $285.00 per month payable biweekly.[2]
Plaintiff filed what he called a motion to revive the garnishment judgment in January, 1971, and the city court gave a judgment reinstating the original judgment of garnishment and ordering the city to pay and deduct 20 per cent of defendant's wages, excepting only $100.00 monthly from the seizure under the former garnishment statute. On appeal that judgment was affirmed with the holding: "* * * The judgment [of plaintiff against the garnishee, the City of New Orleans] therefore gave plaintiff a `vested right' in the then existant portion of defendant's salary which was subject to seizure. Clearly, an amendment subsequent to that judgment, which changed the amount of exemption, should not be retrospectively applied * * *."
The remedy afforded judgment creditors of seizing future or unearned wages or portions of wages for satisfaction of debts reduced to judgment is not a remedy of long standing. Louisiana's first provision permitting the seizure of a debtor's unearned wages from an employer originated with Act 181 of 1932.[3] Very few of the *519 states do not now provide this remedy for a judgment creditor. In May of 1968 the United States Congress made findings that the unrestricted garnishment of compensation encouraged the making of predatory extensions of credit which diverted money into excessive credit payments and hindered interstate commerce. That application in different states of garnishment as a creditor's remedy often resulted in a loss of employment and production and consumption of goods which constituted a substantial burden on interstate commerce. Finally Congress found that the great disparities in the laws of the several states on the garnishment remedy destroyed the uniformity of the bankruptcy laws throughout the country. For that reason Congress concluded it was necessary to regulate the garnishment remedy in order to regulate commerce and establish uniform bankruptcy laws. 15 U.S.C.A. § 1671.
For these reasons Congress placed certain restrictions on state garnishments and fixed the maximum of disposable earnings which could be subject to garnishment. 15 U.S.C.A. § 1673(c) provided: "No court of the United States or any State may make, execute, or enforce any order or process in violation of this section." (Emphasis supplied.) If a state regulates garnishment with restrictions substantially similar to those provided in 15 U.S.C.A. § 1673(a), the Secretary of Labor is permitted by regulation to exempt such a state from these provisions. 15 U.S.C.A. § 1675. States were permitted under this sub-chapter to prohibit garnishments or provide for more limited garnishments. § 1677. It is clear from the congressional findings and declaration of purpose that these provisions were remedial. However, the states were given time to conform voluntarily to the federal requirement, and the effective date of the provisions was fixed as July 1, 1970.
It is obvious that the Louisiana legislation increasing the wage exemption from seizure (Act 242 of 1970, which was certified as emergency legislation and became effective July 2, 1970) was state remedial legislation in response to, and in compliance with, the congressional mandate. Clearly this state hoped to acquire approval from the United States Department of Labor to enforce its provision and thus eliminate federal administrative invasion in this field.
The federal laws provide only for administrative remedy through a division of the Department of Labor and do not authorize a private civil action to enforce the provisions unless all administrative remedies have been exhausted. Oldham v. Oldham, 337 F.Supp. 1039 (D.C.Iowa 1972), relying on Jordan v. Montgomery Ward & Co., 442 F.2d 78 (8th Cir. 1971); see also Bond v. Dentzer, 325 F.Supp. 1343 (D.C. N.Y.1971).
The debtor's relief, if any, from a garnishment encroaching upon wages because of increased exemption since the date of the original garnishment judgment must come under a retroactive application of R. S. 13:3881 as amended by Act 242 of 1970 or by declaration from this court that application of the provisions of former R.S. 13:3881 is unconstitutional as violative of a retroactive congressional act enacted pursuant to the constitutional powers of the United States to regulate interstate commerce and bankruptcy proceedings.
The plaintiff's contention forces us to a constitutional issue also, for he urges that the 1970 amendment to our garnishment proceedings would, if retroactive, constitute (1) impairment of a contract and (2) the taking of a vested right. We consider the plaintiff's contentions first, for if we find them without merit, we can pretermit the question of constitutionality of the application *520 of R.S. 13:3881 before amendment.
The Contract Clause of the United States Constitution provides that no state shall pass any law impairing the obligation of contract. It is evident that the federal government is not restricted under the Contract Clause. Therefore, the congressional provision for regulating garnishment may be applied retroactively and is not subject to a defense of impairment of contract if it meets due process requirements. We examine, then, to see whether Act 242 of 1970 amending R.S. 13:3881 is in violation of the United States Constitution's Contract Clause. We answer that it is not, and that it may be and should be applied retroactively.
Some of the early jurisprudence of the United States Supreme Court strictly examined state statutes to determine whether there was impairment of contract.[4] However, even in the early jurisprudence exceptions were increasingly made, and the strictness of interpretation of the Contract Clause was eroded.[5] For example, although the state law may be read into a private contract, the fact that a state permits within its jurisdiction certain contracts imports a reservation of its sovereign right to change those laws in the exercise of the police power for the protection of public health, safety, morality, and general welfare, and those enactments may be given retroactive effect.[6] Some of the earlier cases drew a distinction between the obligation of a contract and the remedy given by the state to enforce the obligation. It was then said: "Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct."[7] The court held that if the state abrogates an existing remedy and there is no effective or enforceable one left, the contract is in fact impaired by the impairment of the remedy.[8] This was modified, however, with the holding that the remedy existing at the date of contract may be totally abrogated if another equally effective remedy remains or replaces the one taken.[9]
Recent United States Supreme Court jurisprudence has not concerned itself with the distinction between obligation and remedy to enforce obligation. The constitutionality of laws making changes in obligations as well as in remedy is not determined in light of the purpose and the reasonableness of the enactment.
It is not unreasonable to conclude that the limitation to the states of the original prohibition against contractual impairment was framed in the belief that the states would be primarily responsible for private law in this country. However, the federal Congress assumed an ever increasing role in enacting private laws. The United *521 States Supreme Court undoubtedly realized that contractual rights could be jeopardized to the same extent by federal laws as by state laws. It therefore considered whether there was state or federal impairment of contracts and encroachment upon freedom to contract under the concept of due process of the Fifth and Fourteenth Amendments.
Early the court said: "For it is settled that neither the `contract' clause nor the `due process' clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be addicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise."[10] The court has further said: "Not only is the constitutional provision [Contract Clause] qualified by the measure of control which the state retains over remedial processes, but the state also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end `has the result of modifying or abrogating contracts already in effect.' * * * Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. * * *" The court there upheld a moratorium on foreclosure sales with the further statement that it is no objection to the exercise of the protective power of the state "* * * that the performance of existing contracts may be frustrated by the prohibition of injurious practices * * *".[11] In 1936 the court said in upholding the State of Washington's minimum wage statute that it was within the police power of the state to regulate and change the employer-employee contractual rights.[12] In 1940 a state was allowed to apply retroactively legislation restricting shareholders' interests in building and loan associations contrary to the right as it existed when the shares were purchased, because the obligation "was subject to the paramount police power".[13] In 1965 the court stated: "* * * it is not every modification of a contractual promise that impairs the obligation of contract under federal law * * *."[14]
Basically, the law applicable to a determination of whether retroactive legislation affecting private contractual rights is such an impairment of contract as to violate the Contract Clause of the United States Constitution is whether the legislation is addressed "to a legitimate end and the measures taken are reasonable and appropriate to that end".[15]
If the statutory remedy of garnishment is read into the contract between debtor and creditor at the time of the purchase of merchandise, we must also read into the contract of purchase the right to require a note secured by chattel mortgage and the remedy of exercising vendor's privilege subject to exemption. It may be said in relation to the garnishment exemptions that the creditor not only read into the contract the statutory exemptions provided at the time of the contract, but necessarily read into that exemption law the right of the state in the exercise of its police power *522 to change the exemptions for the protection of the welfare of the people of this state.[16]
If we were to examine the legislation and the contract affected by it in light of whether the legislation impairs the contract or merely impairs a remedy, we would, of course, say that the right of garnishment is no more than a remedy. We would also be forced to say, as did Justice Holmes in Pittsburg Steel Co. v. Baltimore Equitable Society, 226 U.S. 455, 33 S.Ct. 167, 57 L. Ed. 297 (1913), that the plaintiff's contract subject to the right of garnishment was at the time of the contract subject to particular infirmities: The creditor could not require the debtor to work, and if the debtor did not work, there were no wages subject to garnishment. There was no vested contractual obligation that this particular debtor would have wages available for the remedy of garnishment if he failed to pay the debt. When the state changed the remedy by increasing the exemption, it did not abrogate the remedy; it did not make the remedy any less certain than it was at the time of the contract; it simply in the interest of public welfare increased the debtor's exemption so that he and his family might be saved from being a charge upon the state.
Not only does the creditor's remedy of garnishment remain, but there is reserved to the creditor other adequate remedies for the enforcement of his contract. Those other remedies, chattel mortgage and vendor's privilege, were controllable by the parties, could have been made express, and were not subject to unilateral determination by the debtor of his creditor's rights as was the garnishment remedy.
We declare Act 242 of 1970 amending R.S. 13:3881 to be remedial and retroactive legislation without constitutional infirmity under the United States Constitution's Contract Clause.
The Court of Appeal based its determination that the act could not be applied retroactively upon a theory that the creditor's judgment of garnishment for both earned and unearned wages against the employer of the debtor was a vested right of the creditor, and that a legislative attempt to retroactively divest this right would be unconstitutional.
Even if we were to assume arguendo that the judgment of the creditor against the garnishee is a vested right, the general constitutional principles enunciated in relation to the states' authority to impair contracts would apply. Any right the creditor has acquired is subject to a proper exercise of the police power for legitimate purposes when the exercise of the power is not unreasonable.[17] However, it is readily apparent that although a judgment against a garnishee is a final judgment for purposes of determining procedural rights, it cannot be said that such a judgment vests in the creditor-garnishor any right other than to receive any non-exempt portion of earned wages held by the garnishee at the time of judgment. Both the employer and the employee may exercise the right of termination of employment, which of course terminates any right or remedy the creditor-garnishor has against the employer-garnishee. Therefore, although the judgment of garnishment is a final judgment, we must conclude it does not as to unearned wages vest a right in the creditor. It may be said that the judgment right is "aleatory". If these parties may extinguish the right and the remedy, certainly the state in the exercise of its police power for the protection of the public may extinguish the right or the remedy.
We therefore also conclude that Act 242 of 1970 amending R.S. 13:3881 does not divest vested rights and that a retroactive application of it to a judgment of garnishment is not unconstitutional.
*523 The judgments of the Court of Appeal and the district court are reversed, and the following judgment is rendered:
It is ordered, adjudged, and decreed that the judgment of garnishment of October 16, 1968, is amended, and the City of New Orleans, garnishee, is to deduct from the wages of the defendant Richard Wilson and to pay to plaintiff Ory J. Hooter d/b/a O. J. Hooter Furniture Company out of the disposable earnings of the defendant each pay period until the judgment is fully paid, provided that these payments do not encroach upon the disposable earnings exempt under law, namely, 75 per cent of his disposable earnings for the pay period or upon a weekly earning 30 times the federal minimum hourly wage (Section 6(a)(1), Fair Labor Standards Act of 1938), and provided that the exemption from garnishment shall in no way be less than at a rate of $70.00 per week. Costs of these proceedings are taxed against the plaintiff.
SANDERS, J., concurs in the result.
SUMMERS, J., concurs in the decree.
NOTES
[1] R.S. 13:3881 as amended by Act 242 of 1970 reads:

"The following income or property of a debtor is exempt from seizure under any writ, mandate, or process whatsoever:
"(1) Seventy-five per centum of his disposable earnings for any week, or the amount by which his disposable earnings for that week exceed thirty times the Federal Minimum Hourly Wage prescribed by Section 6(a)(1) Fair Labor Standards Act of 1938 in effect at the time the earnings are payable but in no case shall this exemption be less than at the rate of seventy dollars per week of disposable earnings or a multiple or fraction thereof according to whether the employee's pay period is greater or lesser than one week. The term `disposable earnings' means that part of the earnings of any individual remaining after the deduction from those earnings required by law to be withheld."
[2] Disposable earnings are earnings remaining after deduction of amounts required by law. The defendant's weekly disposable earnings would be approximately $71.50. Therefore only $1.25 per week would not be subject to the exemption provided under the statute as amended.
[3] Although any money or other property belonging to the debtor in the hands of a third party and not specifically exempt was subject to seizure under a judgment against the debtor, only earned salaries of some debtors (earnings of laborers and public officials were exempt) could be seized before the 1932 act. Act 115 of 1928 attempted to include laborers (other than farm and domestic) within the remedy of garnishment of earned wages. It also sought to make unearned future wages and salaries of judgment debtors subject to seizure under an installment process of collection. That act, however, was declared unconstitutional because its title was not indicative of the latter object. Surety Credit Co. v. Tieman, 171 La. 581, 131 So. 678 (1930). Finally Act 181 of 1932 provided for seizure of unearned as well as earned wages, and Act 183 of that year provided an exemption from seizure of $60.00.
[4] Edwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793 (1878); Bank of Minden v. Clement, 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857 (1921); W. B. Worthen Co. v. Thomas, 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344 (1934); W. B. Worthen Co. v. Kavanaugh, 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298 (1935).
[5] Northwestern Fertilizing Co. v. Hyde Park, 97 U.S. 659, 24 L.Ed. 1036 (1878); Pittsburg Steel Co. v. Baltimore Equitable Society, 226 U.S. 455, 33 S.Ct. 167, 57 L.Ed. 297 (1913); Atlantic Coast Line R. Co. v. Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721 (1914); Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934); Faitoute Iron & Steel Co. v. Asbury Park, 316 U.S. 502, 62 S.Ct. 1129, 86 L.Ed. 1629 (1942).
[6] See Northwestern Fertilizing Co. v. Hyde Park, supra; Stone v. State of Mississippi, 101 U.S. 814, 25 L.Ed. 1079 (1880); Atlantic Coast Line R. Co. v. Goldsboro, supra; Home Building & Loan Ass'n v. Blaisdell, supra.
[7] Sturges v. Crownishield, 4 Wheat. 122, 4 L.Ed. 529 (1819).
[8] Waggoner v. Flack, 188 U.S. 595, 23 S.Ct. 345, 47 L.Ed. 609 (1903).
[9] Richmond Mortgage & Loan Corporation v. Wachovia Bank & T. Co., 300 U.S. 124, 57 S.Ct. 338, 81 L.Ed. 552 (1937).
[10] Atlantic Coast Line R. Co. v. Goldsboro, supra.
[11] Home Building & Loan Ass'n v. Blaisdell, supra. See also Schwartz, A Commentary on the Constitution of the United States: The Right of Property § 302, p. 167 (1965).
[12] Morehead v. New York ex rel. Tipaldo, 298 U.S. 587, 56 S.Ct. 918, 80 L.Ed. 1347 (1936).
[13] Veix v. Sixth Ward Building & Loan Ass'n, 310 U.S. 32, 60 S.Ct. 792, 84 L. Ed. 1061 (1940).
[14] El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965).
[15] Home Building & Loan Ass'n v. Blaisdell, supra; 1 Antieau, Modern Constitutional Law § 3:33 (1969).
[16] In 1932 $60.00 per month of the earnings were reserved to the debtor-employee. At the time of this contract the exemption had been increased to $100.00 per month by legislative act in 1960, and the 1970 Legislature has now increased the exemption to approximately $280.00 per month.
[17] Atlantic Coast Line R. Co. v. Goldsboro, supra.