345 So.2d 1014 (1977)
OUACHITA NATIONAL BANK IN MONROE, Plaintiff-Appellant,
v.
A. L. ROWAN et al., Defendants-Appellees.
No. 13235.
Court of Appeal of Louisiana, Second Circuit.
April 25, 1977.
Rehearing Denied May 23, 1977.
*1015 Hudson, Potts & Bernstein by Donald L. Kneipp, Monroe, for plaintiff-appellant.
Thompson, Sparks, Cudd & Dean by George B. Dean, Jr., Monroe, for defendants-appellees.
Before PRICE, MARVIN and JONES, JJ.
MARVIN, Judge.
The principal issue is whether the increased homestead exemption in the 1974 Louisiana Constitution impairs the obligation of contracts of indebtedness which preexisted the constitution, but which were reduced to judgment and executed after the constitution became effective.[1]
The lower court allowed the increased exemption to the judgment debtor ($15,000) and the judgment creditor (Bank) appeals. We affirm.
As a preliminary issue, the Bank contends the existence of encumbrances in this case which contain homestead waivers and which are superior to the Bank's judgment, entirely exhaust or deplete the homestead (in whatever amount), and therefore, nothing should have been allowed the homestead claimant by the lower court. In effect, the Bank would have us reduce the total indebtedness owed to creditors who enjoy homestead waivers by the amount of the homestead. Thus, under this approach the proceeds of the sale would not benefit the homestead claimant unless the total indebtedness of creditors with homestead waivers was less than the amount of the homestead.
The law favors and has designed an approach, however, for the protection of the homestead.[2] Under the correct approach, the homestead claimant is recognized as a creditor with other claimants to the proceeds of a judicial sale and all claimants are paid according to their respective ranking after payment of costs.
If the ranking creditor enjoys a homestead waiver, the proceeds available *1016 are subject to his claim and the amount of the homestead is not deducted or taken into consideration. If at the time his claim is considered according to rank, the creditor does not enjoy a homestead waiver, the homestead claimant legally outranks him and the amount of the homestead is deducted from the proceeds which are available to satisfy his claim. Thus, the homestead claim is ranked above the claim of a creditor who does not enjoy a homestead waiver. Under this application, the purpose of the homestead exemption is fulfilled instead of frustrated. See: LSA Const.1974, Art. XII, § 9; LSA Const.1921, Art. XI, § 1; Vol. XXXVII, Transcript of Constitutional Convention, January 10, 1974, pp. 38-44; Engstrom's of Alexandria, Inc. v. Vaughn, 138 So.2d 672 (La.App. 3rd Cir. 1962); State v. Code, 215 La. 485, 41 So.2d 62 (1949); Consolidation Credit Corp. of Baton Rouge v. Forkner, 219 So.2d 213 (La.App. 1st Cir. 1969); Barlow v. Estate of Carr, supra.
While earlier judicial pronouncements lend support to the contentions of the Bank, the latest cases of the United States Supreme Court and the Louisiana Supreme Court are to the contrary.[3] Earlier cases held that if a remedy formerly available to enforce a contract was abrogated or substantially affected by state action, then the contract itself was impaired.[4] Art. I, § 10, U.S.Const.; Art. XIV, § 23, La.Const.1974. Courts then began to concern themselves with fine distinctions between remedy and obligation until the second half of this century.
In Simmons, the U. S. Supreme Court summarized the development of the law in this language:
"The City [of El Paso] seeks to bring this case within the long line of cases recognizing a distinction between contract obligations and remedy and permitting a modification of the remedy as long as there is no substantial impairment of the value of the obligation. [Citations omitted]
* * * * * *
"We do not pause . . . to chart again the dividing line under federal law between `remedy' and `obligation' . . For it is not every modification of a contractual promise that impairs the obligation of contract under federal law, any more than it is every alteration of existing remedies that violates the Contract Clause. [Citations omitted] . . ."
"The decisions `put it beyond question that the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula,' as Chief Justice Hughes said in Home Building & Loan Assn. v. Blaisdell, 290 U.S. 398, 428, 54 S.Ct. 231, 236 [78 L.Ed. 413]. The Blaisdell opinion, which amounted to a comprehensive restatement of the principles underlying the application of the Contract Clause, makes it quite clear that `[n]ot only is the constitutional provision qualified by the measure of control which the state retains over remedial processes, but the state also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end "has the result of modifying or abrogating contracts already in effect." [Citations omitted] Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order * * * This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this Court.' [Citations omitted] Moreover, the `economic interests of the state may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts.' [Citations *1017 omitted] The State has the `sovereign right * * to protect the * * * general welfare of the people * * *. Once we are in this domain of the reserve power of a State we must respect the "wide discretion on the part of the legislature in determining what is and what is not necessary."' [Citations omitted] As Mr. Justice Johnson said in Ogden v. Saunders, [12 Wheat 213, 6 L.Ed. 606] `[i]t is the motive, the policy, the object, that must characterize the legislative act, to affect it with the imputation of violating the obligation of contracts.' [Citations omitted]
"Of course, the power of a State to modify or affect the obligation of contract is not without limit. `[W]hatever is reserved of state power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other. This principle precludes a construction which would permit the state to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them.'" 85 S.Ct. 581-585, Footnotes omitted, Emphasis supplied.
Following this reasoning is Hooter v. Wilson, 273 So.2d 516 (La.1973), by the Louisiana Supreme Court.
C.C. Art. 1968 reads in part:
"[T]he property of the debtor shall be liable for all consequences attending their non-performance; but this right can not be exercised, unless the contract be broken, nor until judgment be obtained for the recovery of what is due in consequence of its breach." Emphasis supplied.
Until judgment was rendered in favor of the Bank (which was after the homestead exemption was increased), it had at best only an inchoate and not a vested interest in its debtor's property. The record reflects that the bank's debtor possessed assets including interests in a business and in real estate, in addition to his homestead, at the time the contracts of indebtedness were executed. The Bank had no vested interest in the homestead of its debtor at least until it obtained its judgment and recorded it in the mortgage records, and we are not convinced that the debtor's contract with the Bank was "impaired" by the increase in the homestead exemption.[5] In Wilson, the Louisiana Supreme Court said:
"Even if we were to assume arguendo that the judgment of the creditor against the garnishee is a vested right, the general constitutional principles enunciated in relation to the states' authority to impair contracts would apply. Any right the creditor has acquired is subject to a proper exercise of the police power for legitimate purposes when the exercise of the power is not unreasonable." 273 So.2d 522. Emphasis supplied.
It is also contended that the result below is a retroactive application of the homestead exemption contrary to Art. 14, Section 26, La.Constitution 1974.[6] The homestead sections of the constitution provide:
"Exemptions From Seizure and Sale. The legislature shall provide by law for exemptions from seizure and sale, as well as waivers of and exclusions from such exemptions. The exemption shall extend to at least fifteen thousand dollars in *1018 value of a homestead, as provided by law." Art. 12, Sec. 9.
"Exemption from Seizure and Sale. The provisions of Article XI of the Constitution of 1921 shall be continued as a statute until the legislature enacts the law required by Article XII, Section 9 of this constitution, but the amount of the exemption shall be fifteen thousand dollars in value until otherwise fixed by law." Art. 14, Sec. 34.
The Constitution became effective before the Bank obtained and recorded its judicial mortgage. The homestead exemption was not a new creation of the 1974 Constitution but was a continuation and mere modification or increase of the existing exemption. We have found that the modification (or increase) does not impair the contracts at issue (the contracts of indebtedness from the debtor to the Bank), but even should our finding be otherwise, we also would find "the economic interests of the state. . . [to] justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts." Simmons, supra, 85 S.Ct. at page 584. The result here does not repudiate the ". . . debts or the destruction of contracts [executed by the debtor to the Bank before the 1974 Constitution] or [deny to the Bank the] the means to enforce them." ibid.
"When the state changed the remedy by increasing the exemption, it did not abrogate the remedy; it did not make the remedy any less certain than it was at the time of the contract; it simply in the interest of public welfare increased the debtor's exemption so that he and his family might be saved from being a charge upon the state." Wilson, supra, 273 So.2d 522.
The Bank's last argument in brief states that ". . . all of the cases dealing with increases in homestead exemptions have held that the increases have no application to obligations incurred prior to the increase." The debtor's obligation to the Bank before the 1974 Constitution was to pay the indebtedness as contracted, and nothing more. The Bank's judicial mortgage, as it affected the homestead, did not arise until after the increase in the exemption. Our holding does not do violence to the holdings of the cases referred to by the Bank under the respective factual circumstances there present. Those cases were not decided under circumstances or in light of the authority present here.
At appellant's cost, judgment is
AFFIRMED.
NOTES
[1] Art. XI, § 1, La.Const.1921, provided a homestead exemption to the value of $2,000, which was increased by amendment in 1938 to $4,000. The 1974 Constitution, Art. XII, § 9; Art. XIV, § 34, which increased the homestead exemption to $15,000, became effective January 1, 1975.
[2] In Barlow v. Estate of Carr, 292 So.2d 721 (La.App. 2d Cir. 1974), we recognized:

"The whole theory of the exemption of the homestead is that the obligation of the debtor to those whom he owes the duty to support is a higher obligation than the payment of his debts. The purpose of the framers of the law was to secure a home beyond the reach of financial misfortune, around which gather the affections of the family; the greatest incentive to virtue, honor, and industry. Hebert v. Mayer, 48 La.Ann. 938, 20 So. 170."
[3] See City of El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965) and Hooter v. Wilson, 273 So.2d 516 (La., 1973).
[4] Edwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793 (1878); Waggoner v. Flack, 188 U.S. 595, 23 S.Ct. 345, 47 L.Ed. 609 (1903); Bank of Minden v. Clement, 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857 (1921).
[5] In Daniel v. Thigpen, 194 La. 522, 194 So. 6, (1940), Daniel's property was encumbered by a mortgage which had been recognized and reduced to judgment in 1935. The amount of the homestead was increased from $2,000 to $4,000 in 1938. The court did not allow the increased homestead exemption because it "impaired" the conventional mortgage and the judgment which pre-existed the increase.
[6] This section reads: Except as otherwise specifically provided in this constitution, this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution."