UNITED STATES of America, Plaintiff,

v.

**Hazel Kerns SMITH wife of/and Elvin L. Smith d/b/a Smith's Truck Service.**

C. A. No. 78–144.

United States District Court,
E. D. Louisiana.

Feb. 13, 1980.

Joan Elaine Chauvin, Asst. U. S. Atty., New Orleans, La., for plaintiff.

Samuel W. Ethridge, Kenner, La., for defendants.

CASSIBRY, District Judge:

The United States brought this suit on behalf of one of its agencies, the Small Business Administration (hereafter "SBA"). The court has jurisdiction pursuant to 28 U.S.C. § 1345 (1976) and 28 U.S.C. § 634 (1976).

In April of 1973, Hazel and Elvin Smith received a loan from the SBA and executed a promissory note.[1] To secure the note, the Smiths gave a collateral mortgage on their home.[2] The terms of the mortgage did not waive the homestead exemption on the Smith's home.

In 1976, the Smiths defaulted on the note, and the SBA by letter of July 2, 1976 declared the remaining indebtedness due and payable. At the time of default, the Smiths owed approximately $18,000 on the note. Mr. Smith filed a petition in bankruptcy on September 22, 1976 and was discharged on June 23, 1977. On January 16, 1978, the Department of Justice instituted foreclosure proceedings against the Smiths. Mrs. Smith filed a petition in bankruptcy on March 1, 1978.

In 1973, when the Smiths executed the collateral mortgage, the homestead exemption in Louisiana was $4,000.00. See La. Const. art. XI, § 1 (1921, amended 1938, repealed 1974). Subsequently, the homestead exemption was increased to $15,000.00 by the adoption of the Louisiana Constitution of 1974. La. Const. art. XII, § 9; art. XIV, § 34. At a status conference held in this matter on July 5, 1979, the parties stipulated that the only issue in dispute is whether the Smiths are entitled to a homestead exemption of $4,000.00 or an exemption of $15,000.00. The parties agreed to submit the matter on briefs.

The United States argues in its brief that the Smiths should not be entitled to any exemption at all. The defendants, on the other hand, rely on the agreement entered into at the status conference that the validity issue is not in dispute. I hold that the United States waived the validity issue by stipulating at the status conference that the only issue in dispute is the amount of the exemption the Smiths are entitled to claim.

Turning to the merits, two recent Louisiana decisions compel me to hold that the Smiths are entitled to claim the full $15,000.00 exemption. In *Hooter v. Wilson*, 273 So. 2d 516 (La.1973), plaintiff obtained

---

1. The loan was actually made by the Whitney National Bank in New Orleans, and the promissory note and collateral mortgage were made out in its favor. The Whitney sold the note and assigned the mortgage to the SBA without recourse in 1976.

2. The Smiths also gave a chattel mortgage on a truck; the chattel mortgage is not a subject of dispute in this suit.

judgment against defendant in March of 1968. To ensure satisfaction of the judgment, plaintiff garnished defendant's wages to the extent permitted by law, exempting 80% of the wages but not less than $100 per month, in October of 1968. In July of 1970, the statutory exemption was increased to exempt 75% of the wages but not less than $70 per week of disposable earnings. Plaintiff claimed that allowing defendant the increased exemption would amount to a state "impairment" of the obligation of contract, in contravention of the U. S. Constitution's contract clause (see U.S. Const. art. I, § 10) and would constitute the taking of a vested right.

As to the impairment of the obligation of contract, the *Hooter* court responded:

> [A]lthough the state law may be read into a private contract, the fact that a state permits within its jurisdiction certain contracts imports a reservation of its sovereign right to change those laws in the exercise of the police power for the protection of public health, safety, morality, and general welfare, and those enactments may be given retroactive effect.
>
> .    .    .    .    .
>
> .    .    . It may be said in relation to the garnishment exemptions that the creditor not only read into the contract the statutory exemptions provided at the time of the contract, but necessarily read into that exemption law the right of the state in the exercise of its police power to change the exemptions for the protection of the welfare of the people of this state.

273 So. 2d at 520, 521–22 (footnotes omitted). The court accordingly held the statute constitutional under the contract clause. See *City of El Paso v. Simmons*, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965).

With respect to the "vested right" challenge, the court also sustained the increased exemption, stating:

> Even if we were to assume arguendo that the judgment of the creditor against the garnishee is a vested right, the general constitutional principles enunciated in relation to the state's authority to impair contracts would apply. Any right the

creditor has acquired is subject to a proper exercise of the police power for legitimate purposes when the exercise of the power is not unreasonable.

These principles apply with equal force to the instant case. Although the homestead exemption as it existed was "read into" the collateral mortgage on the Smith's home, the right of the state to increase the amount of the exemption was impliedly reserved. The essential undertakings of the loan and the collateral mortgage given as security are not affected by the increased exemption. See *City of El Paso*, 379 U.S. at 514, 85 S.Ct. at 586. The mortgagee knew its security would be subject to a homestead exemption and took its chances that the state might increase it. As the *Hooter* court noted,

> When the state changed the remedy by increasing the exemption, it did not abrogate the remedy; it did not make the remedy any less certain than it was at the time of the contract; it simply in the interest of public welfare increased the debtor's exemption so that he and his family might be saved from being a charge upon the state.

*Hooter*, 273 So. 2d at 522.

The decision in *Ouachita National Bank v. Rowan*, 345 So. 2d 1014 (La. App.1977) lends support to the result. In *Ouachita*, the defendant contracted an indebtedness to the plaintiff bank while the homestead exemption was $4,000.00. The exemption was then raised to $15,000.00 in the new constitution. After the effective date of the amendment, the debtor defaulted on the obligation, and the bank reduced its claim to judgment and recorded its judgment in the mortgage records.

The *Ouachita* court rejected plaintiff's contract clause and vested rights challenges on the basis of *Hooter* and *City of El Paso*, and ruled that the defendant was entitled to the full $15,000.00 homestead exemption. The court held that since the debt was not reduced to judgment and recorded as a judicial mortgage until after the exemption was increased, the plaintiff could not com-

plain of an "impaired contract" or vested right. The *Ouachita* facts differ from the instant case in that the collateral mortgage on the Smith's home was executed directly rather than judicially, and before the exemption was increased rather than after. The decision is important nevertheless, because the court affirmed the holding in *Hooter* (whose factual chronology closely parallels this case) in a homestead exemption setting.

The *Ouachita* decision is also important because the court rejected plaintiff's challenge that allowing an increased exemption violates the anti-retroactivity provision of the new Louisiana constitution.[3] The court reasoned:

> The homestead exemption was not a new creation of the 1974 Constitution but was a continuation and mere modification or increase of the existing exemption. We have found that the modification (or increase) does not impair the contracts at issue . . ., but even should our finding be otherwise, we also would find "the economic interests of the state . . . [to] justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts." *Simmons, supra,* 85 S.Ct. at page 584. The result here does not repudiate the ". . . debts or the destruction of contracts [executed by the debtor to the Bank before the 1974 Constitution] or [deny to the Bank the] the [*sic*] means to enforce them." *ibid.*

345 So. 2d at 1018.

The only case standing in the way of the Smiths is *Daniel v. Thigpen,* 194 La. 522, 194 So. 6 (1940). Like the case at bar, in *Daniel,* the plaintiff's property was encumbered by a mortgage that had been reduced to judgment before the homestead exemption was increased (from $2,000 to $4,000). The court ruled that plaintiff could not get the benefit of the increased exemption, because to do so would "impair" the mortgage and the judgment, both of which had preexisted the increase. *Daniel* was decided long before the "new" approach to the contract clause was recognized and affirmed in *City of El Paso,* however, and its reasoning has lost its vitality through the later decisions that I have discussed.[4]

For all of these reasons, I hold that the Smiths are entitled to claim a $15,000.00 homestead exemption on the subject property. Defendants will prepare a judgment accordingly.

---

**3.** The constitution provides:

Except as otherwise specifically provided in this constitution, this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution.

La. Const. art. XIV, § 26.

**4.** I do not place much weight on the citation of *Daniel* by the Ouachita court. The *Ouachita* decision did not expressly overrule *Daniel,* but I take its discussion of the case to imply that it would do so given the proper facts. In *Ouachita,* the court held that the increased exemption did not "impair" the debtor's initial contract with the bank, the only event that predated the increase. The court then noted in the margin that the *Daniel* court had held that the conventional mortgage that predated the increase was "impaired" by the subsequent increase. Such a holding would seemingly be inconsistent with the text accompanying the note, unless the court meant to disapprove of the *Daniel* holding.