405 So.2d 344 (1981)
BRIDGEMAN & CONWAY, et al.
v.
The KORNER REALTY CO., INC., et al.
No. 11665.
Court of Appeal of Louisiana, Fourth Circuit.
September 23, 1981.
*345 Lemle, Kelleher, Kohlmeyer & Matthews, James R. Conway, III, New Orleans, for plaintiffs-appellees.
Babovich, McDowell & Bukaty, Thomas E. McDowell, New Orleans, for Gloria Korner, defendant-appellant.
Mollere, Flanagan & Arceneaux, James T. Flanagan, Metairie, for Floral Enterprises, Inc., garnishee, defendant-in-rule.
Before SAMUEL, REDMANN, GULOTTA, CHEHARDY and KLIEBERT, JJ.
CHEHARDY, Judge.
Defendant Gloria Korner appeals an April 21, 1980 judgment dismissing her Motion to Discontinue Garnishment in favor of the plaintiffs, Bridgeman & Conway, a partnership, and Ben Daly Bridgeman and James R. Conway, III, individually.
The decision also recited that the judgment of that court rendered on October 17, 1979 ordering the garnishee, Floral Enterprises, Inc., to pay the garnishable portion of the earnings of Gloria Korner would be maintained and should remain in full force and effect. It was also decreed that there would be reserved unto Gloria Korner the right to seek reimbursement for one-half of all amounts garnished from her salary after January 1, 1980 out of the community assets and/or to seek reimbursement from Fred D. Korner, personally.
The record of the case indicates The Korner Realty Co., Inc., employed the law firm of Bridgeman & Conway for legal services in connection with its real estate business. Subsequently, Fred D. Korner, as president of the company, and individually, signed a note in an effort to settle a claim for attorney's fees. On January 18, 1978, plaintiffs obtained a judgment against The Korner Realty Co., Inc., and Fred D. Korner for the sum of $1,501.99, plus 8% interest thereon from October 24, 1977 through November 7, 1977, plus legal interest thereon from November 8, 1977 until paid, and for 25% attorney's fees on the aggregate amount of principal and interest, and for all costs, subject to a credit of $600 already paid by Mr. Korner.
On August 20, 1979, that judgment was made executory and on October 17, 1979, it was ordered that Floral Enterprises, Inc., garnishee, pay to plaintiffs, through their attorney, 25% of the disposable earnings of Gloria Korner, said deductions to continue as long as Gloria Korner was employed by the garnishee or until the judgment was paid in full plus all interest, attorney's fees and court costs.
It is uncontroverted that on November 14, 1979, Fred and Gloria Korner availed themselves of Louisiana Act 709 of 1979 *346 and agreed that after January 1, 1980 they would be separate in property.
The sole question presented to this court is whether the earnings of Gloria Korner after January 1, 1980, were rendered exempt from seizure by the plaintiffs due to the separation of property executed between her and her husband, which became effective on that date, and due to the provisions of Acts 1979, No. 707, which also became effective January 1, 1980.
LSA-C.C. art. 2357 states:
"An obligation incurred by a spouse before or during the community property regime, may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation.

"If a spouse disposes of property of the former community for a purpose other than the satisfaction of community obligations, he is liable for all obligations incurred by the other spouse up to the value of that community property.
"A spouse may by written act assume responsibility for one-half of each community obligation incurred by the other spouse. In such case, the assuming spouse may dispose of community property without incurring further responsibility for the obligations incurred by the other spouse." (Emphasis ours.)
A reasonable interpretation of this statute can only lead to the conclusion that its purpose was to exempt from seizure all separate property of the nonincurring spouse in satisfaction of obligations incurred by the other spouse during the existence of the community regime.
Regarding the retroactive application of statutes, the court said in Bostick v. Intern. Minerals & Chemical Corp., 360 So.2d 898, 900 (La.App. 2d Cir. 1978):
"Our general rule of statutory construction is that a law can prescribe only for the future; it can have no retrospective operation. C.C. Art. 8. This general rule excepts those instances where the statute specifically provides for retroactive application or where the statute does not affect a substantive right, but is only procedural or remedial. Young v. Staman, 200 So. 187 (La.App., 2d Cir. 1940); American Finance Corporation of Coushatta, Inc. v. Small, 250 So.2d 768 (La. App., 2d Cir. 1971)."
The plaintiffs contend that to discontinue the garnishments on the defendant's salary after January 1, 1980 would, in effect, be giving a retroactive application of LSA-C.C. art. 2357. Although the judgment of garnishment was rendered against Gloria Korner before she and her husband became separate in property, both their separation of property and the provisions of LSA-C.C. art. 2357 came into effect on January 1, 1980. It would seem, at first glance, therefore, that any salary earned by the defendant after that date was her separate property and therefore not subject to seizure by creditors for community debts incurred by her husband during the community property regime.
However, the court said in the case of Sun Sales Co. v. Hodges, 256 La. 687, 237 So.2d 684, 687 (1970):
"The garnishee strongly contends here, as it did in the Court of Appeal, that the seizure affects no future wages, relying upon the decision of this Court in Humphrey v. Midkiff, 122 La. 939, 48 So. 331. The decision relied upon is no longer controlling. The Wage Garnishment Law (LSA-R.S. 13:3921 et seq.), enacted after the decision, brought future earnings within the grasp of the wage seizure."
The court also said in the case of American Finance Corp. of Coushatta, Inc. v. Small, 250 So.2d 768, 774 (La.App. 2d Cir. 1971), in considering a statute which enlarged garnishment exemptions:
"In the case now before this court, the debt was created, reduced to judgment, and executed through garnishment proceedings prior to the enactment of the amending statute of 1970. If the 1970 statute were to be applied retroactively in this instance, the creditor's rights under the pre-existing contract and judgments would be substantially and materially impaired. * * *"
*347 The Supreme Court, however, considered the constitutionality of the retroactive application of the identical exemption law discussed in American Finance, supra, in Hooter v. Wilson, 273 So.2d 516 (La.1973), and, in effect, overruled the holding of American Finance, supra, at page 522:
"If we were to examine the legislation and the contract affected by it in light of whether the legislation impairs the contract or merely impairs a remedy, we would, of course, say that the right of garnishment is no more than a remedy. We would also be forced to say, as did Justice Holmes in Pittsburg Steel Co. v. Baltimore Equitable Society, 226 U.S. 455, 33 S.Ct. 167, 57 L.Ed. 297 (1913), that the plaintiff's contract subject to the right of garnishment was at the time of the contract subject to particular infirmities: The creditor could not require the debtor to work, and if the debtor did not work, there were no wages subject to garnishment. There was no vested contractual obligation that this particular debtor would have wages available for the remedy of garnishment if he failed to pay the debt. When the state changed the remedy by increasing the exemption, it did not abrogate the remedy; it did not make the remedy any less certain than it was at the time of the contract; it simply in the interest of public welfare increased the debtor's exemption so that he and his family might be saved from being a charge upon the state.
"Not only does the creditor's remedy of garnishment remain, but there is reserved to the creditor other adequate remedies for the enforcement of his contract. Those other remedies, chattel mortgage and vendor's privilege, were controllable by the parties, could have been made express, and were not subject to unilateral determination by the debtor of his creditor's rights as was the garnishment remedy.
"We declare Act 242 of 1970 amending R.S. 13:3881 to be remedial and retroactive legislation without constitutional infirmity under the United States Constitution's Contract Clause.
"The Court of Appeal based its determination that the act could not be applied retroactively upon a theory that the creditor's judgment of garnishment for both earned and unearned wages against the employer of the debtor was a vested right of the creditor, and that a legislative attempt to retroactively divest this right would be unconstitutional.
"Even if we were to assume arguendo that the judgment of the creditor against the garnishee is a vested right, the general constitutional principles enunciated in relation to the states' authority to impair contracts would apply. Any right the creditor has acquired is subject to a proper exercise of the police power for legitimate purposes when the exercise of the power is not unreasonable. However, it is readily apparent that although a judgment against a garnishee is a final judgment for purposes of determining procedural rights, it cannot be said that such a judgment vests in the creditor-garnishor any right other than to receive any non-exempt portion of earned wages held by the garnishee at the time of judgment. Both the employer and the employee may exercise the right to termination of employment, which of course terminates any right or remedy the creditor-garnishor has against the employer-garnishee. Therefore, although the judgment of garnishment is a final judgment, we must conclude it does not as to unearned wages vest a right in the creditor. It may be said that the judgment right is `aleatory'. If these parties may extinguish the right and the remedy, certainly the state in the exercise of its police power for the protection of the public may extinguish the right or the remedy.
"We therefore also conclude that Act 242 of 1970 amending R.S. 13:3881 does not divest vested rights and that a retroactive application of it to a judgment of garnishment is not unconstitutional."
Although, in the present case, LSA-C.C. art. 2357 does not create an express "exemption" from garnishment, as dealt with in American Finance, supra, and *348 Hooter, supra, but rather serves to classify Gloria Korner's separate property earnings after January 1, 1980 as immune from community property debts incurred by her husband during their community property regime, we find the rationale expressed in Hooter, supra, as applicable and controlling regarding interpretation of the subject and that the enactment of this provision was a reasonable exercise of the police power of the State for legitimate purposes. We also find the provisions of this legislative enactment to be remedial rather than substantive in nature and thereby subject to retroactive application. We find, furthermore, such an application of the statute in the present case does not effect an unconstitutional impairment of the plaintiffs' vested contractual rights which may be satisfied from the property of the former community or the separate property of Mr. Korner.
This court is also aware of LSA-C.C. art. 2328, which states:
"A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime. Spouses are free to establish by matrimonial agreement a regime of separation of property or modify the legal regime as provided by law. The provisions of the legal regime that have not been excluded or modified by agreement retain their force and effect."
Furthermore, Comment (b) under the above article recites:
"A matrimonial agreement is governed by the general rules of conventional obligations unless otherwise provided in this Title. The provisions of a matrimonial agreement may not prejudice third persons."
We must, however, reiterate the holding of Hooter, supra, which specifically decreed that a judgment against a garnishee does not vest in the creditor-garnisher a right as to unearned wages of the debtor. We cannot hold, therefore, that the provisions of a matrimonial agreement, such as the one executed by the Korners, prejudices any vested rights of a third party creditor-garnisher once the status of the debtor-spouse's salary changes due to the matrimonial agreement and becomes exempt from seizure due to the nature of the debt. LSA-C.C. art. 2357.
The decision of the district court, therefore, is hereby reversed and it is ordered that Gloria Korner's Motion to Discontinue Garnishment is granted in that there is judgment for her against plaintiffs for the $225 garnished from her salary, with interest upon each garnishment from its date until paid.[1] Plaintiffs are to pay all costs of the proceedings.
REVERSED AND RENDERED.
SAMUEL, J., dissents with written reasons.
SAMUEL, Judge, dissenting.
Imprimis, it should be noted mover alleges that by notarial act dated November 14, 1979, recorded in the Parish of Orleans (the parish of their domicile) she and her husband "agreed that after January 1, 1980 they would be separate in property". She further alleges a true copy of that act is attached to and made a part of her motion. However, no such act or copy is contained in the record, which is totally devoid of any evidence establishing or tending to establish the community has in fact been either modified or terminated. Although, as correctly stated by the majority, the fact that an act exists has not been controverted by the appellees, neither have they admitted it exists, nor have they made any admissions regarding its contents.
Under these circumstances it appears to me this court cannot assume either that the community has been modified or terminated, nor to what extent, if in fact such an event has occurred. Accordingly, we should either affirm the judgment appealed from *349 or remand for the purpose of completing the record in this regard.
But even assuming a complete termination of the community without any other consideration, in my view the trial court judgment maintaining the garnishment is correct and should be affirmed. My reasons for reaching this conclusion are twofold.
First, there is no question about the fact that the original plaintiff was a creditor which had a right to garnish mover's salary. Comment (b) under C.C. Art. 2328 states: "The provisions of a matrimonial agreement may not prejudice third persons". That comment refers to C.C. Arts. 1502 and 1969. In pertinent part C.C. Art. 1969 reads: "... every act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor, is illegal, ..." Article 1969 is applicable here. Mover (the wife-debtor) cannot enter into a contract with her husband and co-debtor obviously intended to, and under this majority reversal will, deprive the creditor of the right it has upon the mover's salary. Certainly, the present action by the majority "prejudices" the third party creditor in that it deprives the creditor of a right it has on mover's property, her salary, during the time she receives a salary and until the debt is paid or otherwise validly extinguished.
Second, the majority holding that mover's earnings were rendered exempt from seizure solely as a result of a unilateral act by herself and her husband would result in making unconstitutional that portion of C.C. Art. 2357 upon which the majority relies. Such a result would follow because of a violation of a constitutionally protected vested right.
The basis for the long established rule that state statutes cannot operate retroactively where vested rights are impaired is that such construction would render those statutes unconstitutional because they would violate Article 1, § 10 of the United States Constitution and Article 1, § 23 of the Louisiana Constitution of 1974 (formerly Article 4, § 15 of the Louisiana Constitution of 1921). Those constitutional provisions prohibit the enactment of laws impairing the obligations of contracts.
In Tennant v. Russell,[1] the Supreme Court of Louisiana held: "A right is vested when `the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete, and unconditional, independent of a contingency, and a mere expectancy of future benefit, or a contingent interest in property * * * does not constitute a vested right.'"
The present case contains all the requirements of a vested right. The creditor's right to garnish the salary of the mover to satisfy the debt had become its property as a present interest and that right was absolute, complete and unconditional. It was not an expectancy of any future benefit or any contingent interest; and it was independent of a contingency.[2] Here, the creditor's *350 right is not just possible or liable to happen. The right is certain for as long as mover and her husband are not divorced or judicially separated (and mover and her husband are neither divorced nor judicially separated). It is a right which is applicable to unearned wages. In fact, by its very nature, garnishment is applicable to future wages. And the means of enforcing a contract is one of the contract obligations protected by the above mentioned constitutional provisions.
Finally, I believe the majority's reliance on Hooter v. Wilson, La., 273 So.2d 516, apparently because of its holding that a garnishment judgment, although final, "does not as to unearned wages vest a right in the creditor",[3] is misplaced. Hooter holds only that Act 242 of 1970, which increased the garnishment exemption, even though applied retroactively, was constitutionally valid and did not infringe on any vested rights of the plaintiff-garnisher who had obtained his garnishment some two years prior to the enactment and effective date of that act.
The Hooter decree simply changed the original garnishment judgment so as to increase the exemption to that established by Act 242 of 1970; it did not extinguish the debt which formed the basis of the garnishment judgment, nor did it prevent collection thereof. As shown in that portion of the opinion quoted by the majority, Hooter carefully points out that "the creditor's remedy of garnishment remains". In this case, as to the wife-mover, the majority either extinguishes the debt itself or, what amounts to the same thing, effectively prevents collection of that debt; the decree not only prevents garnishment, it also prevents any execution of the creditor's judgment. The Hooter court was concerned only with the retroactive application of the legislation which increased the garnishment exemption. It held such application valid as a reasonable and proper legislative "exercise of the police power for the protection of public health, safety, morality, and general welfare," which I do not find to be present in this case. As stated above, the case holds only that such application is valid and does not violate a vested right. Hooter must be read in that context and with that limitation.
The creditor here does have a vested right in the debt, and its collection, owed him by both the husband and the wife as a debt of the community. The majority's action not only violates the legislative intent expressed in Comment (b) under C.C. Art. 2328, it also violates our settled law relative to vested rights.
For these reasons, I respectfully dissent.
NOTES
[1] Discontinuance of the garnishment had been previously ordered by the United States Bankruptcy Court and we then ordered a stay of this proceeding. The Bankruptcy Court has now disclaimed the $225 previously garnished and we therefore resolve this dispute as to that $225.
[1] 214 La. 1046, 39 So.2d 726, 728, also see Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So.2d 845; Stokes v. Aetna Casualty and Surety Company, La.App., 232 So.2d 328; Wells v. Joseph, La.App., 95 So.2d 843.
[2] In pertinent part, Black's Law Dictionary 4th Ed., Webster's Third International Dictionary, The American Heritage Dictionary of the English Language, New World Dictionary of the American Language, Second College Edition, and Webster's New Collegiate Dictionary define the words contingent and contingency as follows: "Possible, but not assured; doubtful or uncertain, conditioned upon the occurrence of some future event which is itself uncertain, or questionable.... synonymous with provisional. That may or may not happen; possible; fortuitous; unpredictable because dependent upon chance; ... Liable, but not certain, to occur; ... Coming from or subject to unforeseen conditions; chance; as a contingent result of a war." and "quality of being contingent or casual; the possibility of coming to pass; an event which may occur; a possibility; a casualty. A fortuitous event which comes without design, foresight, or expectation. A possible or not unlikely event or condition.... the quality or state of being contingent: as a (1): the condition that something may or may not occur; the condition of being subject to chance... something whose occurrence depends on chance or uncertain conditions; ...".
[3] La., 273 So.2d 516, 522.