511 So.2d 1323 (1987)
Susan FOWLER
v.
Ronald DUNSHEE and Julie Dunshee.
No. 87-CA-175.
Court of Appeal of Louisiana, Fifth Circuit.
August 26, 1987.
Dissenting Opinion September 3, 1987.
Rehearing Denied September 17, 1987.
Malcolm B. Robinson, Jr., The Law Offices of Malcolm B. Robinson, Jr., Metairie, for defendant-appellant.
George B. Recile, New Orleans, for plaintiff-appellee.
Before CHEHARDY, C.J., and KLIEBERT and GRISBAUM, JJ.
GRISBAUM, Judge.
This appeal relates to a suit for default on a promissory note. The trial court determined the obligation was a community debt and held that the wife was "personally" liable for the note signed by her husband during the existence of the community regime. We amend and, as amended, affirm.

ISSUE
The sole question presented is whether a spouse who did not incur the disputed obligation nor dispose of community assets other than for the payment of community debts is to be held liable beyond her interest in the community regime for the obligation incurred during the existence of that regime.

*1324 FACTS
On June 4, 1983, Mr. Ronald Dunshee and Ms. Susan Fowler signed an agreement in which Mr. Dunshee purchased all the assets and inventory of a business known as Driftwood Ceramics. As consideration, Mr. Dunshee was to pay Ms. Fowler $12,000 for which he signed a promissory note dated June 6, 1983, payable to her order on demand. Thereafter, demand was made to no avail, resulting in suit and this appeal.
At the time of the execution of the note, Ronald and Julie Dunshee were married. The record shows Ms. Dunshee was divorced from Mr. Dunshee by virtue of a December 13, 1985 judgment. They previously had obtained a legal separation by judgment dated November 17, 1983. Subsequently, the Dunshees reconciled, obtaining a second judgment of separation on April 29, 1985 (the petition having been filed on February 6 amid proceedings that led to the December 1985 divorce). Accordingly, when Mr. Dunshee signed the note, no legal separation had been obtained; however, Ms. Dunshee claims that the two were not "at that time" living together and further states that Mr. Dunshee, in accord with her request, had left the family home on May 29, 1983. However, as emphasized by opposing counsel at trial, in her separation petition alleging abandonment and at the trial thereof, Ms. Dunshee had asserted that her husband had left about July 22, 1983. Under cross-examination by her own counsel, Ms. Dunshee explains that she can accurately date her husband's leaving because a friend, Carolyn Ganucheau, and her family moved into the Dunshee residence on May 28 to live with her.
Finally, she recapitulates that, at the time, she knew neither that her husband was attempting to purchase Driftwood Ceramics nor that he had signed a promissory note. She also noted she never participated in the business and never benefited from it.

ANALYSIS
The trial court reasoned that, since Mr. and Ms. Dunshee were married at the time the obligation was incurred, there was a legal presumption that the obligation was a community debt. In its Reasons for Judgment, the trial court states:
There was no evidence presented to rebut the presumption other than that the defendants were physically separated and Mrs. Dunshee had no knowledge or benefits from the purchase of this business. A petition for legal separation was filed on November 14, 1984 subsequent to the signing of the purchase contract.
Likewise, no evidence was presented to show that the business was bought for some reason other than the common interest of the defendants or for the benefit of the community. Further, no evidence was presented to show that the business was purchased with Mr. Dunshee's separate funds. Therefore, the debt is a community debt owed by both defendants jointly. C.C. Art. 2360, et seq. Mr. Dunshee was never served in these proceedings. For that procedural reason, Mrs. Dunshee alone, is cast for the total amount.
After a careful review of the record in its entirety, we find there was evidence that, upon the trial court's reasonable evaluation of credibility, furnished a legal basis for its finding. There being no manifest error, we will not disturb these findings and must agree with them.
However, we find the question whether the obligation is deemed separate or community is not dispositive in light of La.C.C. art. 2357 which in part states:
An obligation incurred by a spouse before or during the community property regime, may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation.
If a spouse disposes of property of the former community for a purpose other than the satisfaction of community obligations, he is liable for all obligations incurred by the other spouse up to the value of that community property.
By this provision the legislature has determined that pre-termination creditors may satisfy their respective obligations from *1325 property of the former community and from the separate property of the spouse who incurred the obligation. It follows that the partition of the assets of the former community between the husband and the wife, although effective as to them, cannot affect pre-dissolution creditors. It also follows that the spouse who has not incurred the obligation becomes personally liable only by disposing of assets of the former community for a purpose other than payment of community obligations. First Security Bank and Trust Co. v. Dooley, 480 So.2d 842, 845 (La.App. 2d Cir.1985); Bridgeman & Conway v. Korner Realty Co., Inc., 405 So.2d 344, 346 (La.App.4th Cir.1981). Therefore, whether the obligation incurred by Mr. Dunshee is deemed a separate or a community obligation is immaterial. The assets of the former communitynot Ms. Dunshee's separate property nor Ms. Dunshee personallyare liable for the debt.
For the reasons assigned, the judgment of April 8, 1986 is hereby amended to limit Julie Dunshee's liability to the extent of her interest in the property of the former community existing between herself and Ronald Dunshee pursuant to La.C.C. art. 2357. In all other respects, the judgment is affirmed. Each party to this appeal is to be held responsible for his or her own costs.
AMENDED AND AFFIRMED.
KLIEBERT, J., dissents with written reasons to follow.
KLIEBERT, Judge, dissenting.
Although I agree with the majority's ruling as to the provisions of Article 2357 of the Civil Code, I do not believe the article is dispositive of the present issue involved in this appeal, i.e., once the community regime has been terminated and its assets distributed (which is the case here)[1] can a community creditor whose alleged debt is represented by a note signed by the managing spouse have his debt reduced to judgment by a suit brought solely against the former spouse who was not the managing or incurring spouse? I think not and accordingly respectfully dissent from the majority opinion.
Civil Code Article 2336 provides that the community regime is not a legal entity; hence, it cannot sue and be sued as a corporation can. Rather the action must be brought against the individual members forming the community regime. Moreover, where, as here, the alleged community debt sought to be reduced to judgment is a note signed solely by one spouse, consideration must be given to LSA-R.S. 10:3-401(1) which provides:
"No person is liable on an instrument unless his signature appears thereon."
Notwithstanding this provision, the trial judge rendered a personal judgment against the former wife.
The majority, recognizing the trial judge's error in rendering a personal judgment against the appellant, merely amended the judgment "... to limit Julie Dunshee's liability to the extent of her interest in the property of the former community existing between herself and Ronald Dunshee..." and then proceeded to ignore the procedural problem which resulted from that conclusion.
Prior to January 1, 1980, the husband was the proper defendant in an action to enforce an action against the marital community. (See Article 735 of the Code of Civil Procedure prior to its revision by Act No. 711 of 1979.) Following its revision Code of Civil Procedure Article 735 (the applicable article here) provides:
"Either spouse is the proper defendant, during the existence of the marital community, in an action to enforce an obligation against community property; however, if one spouse is the managing spouse with respect to the obligation *1326 sought to be enforced against the community property, then that spouse is the proper defendant in an action to enforce the obligation.
When doubt exists whether the obligation sought to be enforced is a community obligation or the separate obligation of the defendant spouse, that spouse may be sued in the alternative.
When only one spouse is sued to enforce an obligation against community property, the other spouse is a necessary party. Where the failure to join the other spouse may result in an injustice to that spouse, the trial court may order the joinder of that spouse on its own motion." (Emphasis Supplied)
As may be noted from the article "either spouse" is a proper defendant only "during the existence of the marital community", and where one spouse is the managing spouse, then the managing spouse is the proper defendant in the action.
In substance and effect, although Article 735 is applicable only during the existence of the marital community, the majority opinion has, by affirming the judgment rendered solely against a former non-managing or non-incurring spouse, extended the application of the article to a situation where the community regime was terminated and partitioned years before the action was brought.
In my view, once the community has been terminated and its assets partitioned, the spouse who incurs the obligation is an indispensable party to proceedings to reduce the obligation to judgment. The substantial possibility of the existence of defenses which are unknown to the spouse who did not incur the obligation mandates such a conclusion, for to rule otherwise would be to shift to that spouse the burden of defending an action the basis for which the spouse may be unaware exists prior to the suit being brought. The folly of allowing such a result is magnified if one considers the implication in tort liability and the myriad of defenses thereto. For example, consider the situation where an act of malpractice is committed by a doctor or a lawyer during the existence of a community regime and the victim (whose knowledge of the act and damages is acquired years after its occurrence) brings his action for damages solely against the non-incurring or non-managing spouse and non-negligent spouse years after the negligent act and the termination of the community. Under the majority's ruling here, the action could be maintained solely against this non-negligent spouse because she remains in occupancy of the former community home which she acquired in the partition of the assets of the community regime at the time of its termination.
Moreover, the majority's amendment "to limit" the satisfaction of the judgment "to her interest in the property of the former community" does not specify what constitutes her interest. For example, assuming Julie Dunshee received in the partition a parcel of real estate which formerly was an asset of the community regime, would the plaintiff here be entitled to satisfaction out of the whole of the property formerly owned by the community, or out of Julie Dunshee's undivided one-half interest which was her interest in the community?
For the foregoing reasons, I believe the judgment against Mrs. Dunshee should have been vacated and set aside and the case remanded to the trial court for a retrial which could proceed only upon the incurring spouse being made a party defendant.
NOTES
[1] Although the agreement to purchase the ceramics business was introduced in evidence as P-1 and the community settlement agreement was introduced as P-6, neither are in the record before us. The transcript of the testimony shows the note was dated June 6, 1983, at which time the community regime was in existence and the action to obtain a judgment was filed on March 25, 1985, at which time the community regime had been terminated and the property partitioned.