535 So.2d 851 (1988)
Wynell S. LAWSON, Plaintiff-Appellant,
v.
Rodney B. LAWSON, Defendant-Appellee.
No. 19840-CA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1988.
Hargrove, Guyton, Ramey and Barlow by Joseph L. Shea, Jr. and Philip E. Downer, III, Shreveport, for plaintiff-appellant.
Love, Rigby, Dehan, Love & McDaniel by Kenneth Rigby, Shreveport, for defendant-appellee.
Before MARVIN, JASPER E. JONES and LINDSAY, JJ.
MARVIN, Judge.
In this action on two promissory notes executed by her son while he was married, plaintiff appeals a judgment that rejected her demands against her ex-daughter-in-law. Plaintiff contends her son's ex-wife is personally liable for the debt up to the value of the ex-wife's interest in the property formerly comprising the community estate which terminated when the son and *852 daughter-in-law were separated before plaintiff brought her action. Only plaintiff's son signed the notes. The trial court found the obligation on the notes was not a community obligation but a separate obligation of plaintiff's son. Plaintiff does not contest this finding.
The ex-wife concedes that the property of the former community may be seized and sold to satisfy the debt, but contends she is not personally liable for the debt. At this juncture under this record, the ex-wife has not moved to partition the former community estate or to assert claims for reimbursement against her ex-husband.
We affirm the judgment which cast only the son for the $50,000 due on the notes, with interest, and attorney fees. CC Arts. 2345, 2357.

NON-DEBTOR SPOUSE'S LIABILITY
CC Arts. 2345 and 2357 identify the property available to a creditor for satisfaction of obligations incurred before or during the debtor's marriage, if the spouses live under a community property regime:
Art. 2345. Satisfaction of obligation during community.
A separate or community obligation may be satisfied during the community property regime from community property and from the separate property of the spouse who incurred the obligation.
Art. 2357. Satisfaction of obligation after termination of regime.
An obligation incurred by a spouse before or during the community property regime, may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation.
If a spouse disposes of property of the former community for a purpose other than the satisfaction of community obligations, he is liable for all obligations incurred by the other spouse up to the value of that community property.
A spouse may by written act assume responsibility for one-half of each community obligation incurred by the other spouse. In such case, the assuming spouse may dispose of community property without incurring further responsibility for the obligations incurred by the other spouse.
These articles were part of the extensive community property law revisions enacted in Act 709 of 1979, effective January 1, 1980. Recent cases and law review commentaries discuss and explain the import and meaning of these articles. We have omitted footnotes from all law review excerpts quoted in this opinion.
Under Art. 2345 and the first paragraph of Art. 2357, the creditor of a spouse has the same property available to satisfy the debt after the community regime has ended as he had during its existence: all assets of the community, including the interest of the non-debtor spouse, as well as the separate property of the spouse who incurred the debt. Note, Termination of the Community, 42 La.L.Rev. 789 (1982), at 789-791, 793. The creditor cannot seize the non-debtor spouse's separate property to satisfy the other spouse's obligation unless the non-debtor spouse disposes of property of the former community for a purpose other than the satisfaction of community obligations, or assumes in writing responsibility for half of each community obligation incurred by the other spouse. Riley, Analysis of the 1980 Revision of the Matrimonial Regimes Law of Louisiana, 26 Loy.L.Rev. 453 (1980), at 509-510.
The above analysis criticizes the legislature's decision to make one spouse's interest in community property available to satisfy the other spouse's separate debt:
Article 2357 ... permits the separate creditor of one spouse to seize all the assets of the former community whether or not they are still in the possession of his debtor. The creditor can thus demand payment of one spouse's separate debt out of property that belongs to the other spouse the half-interest in the former community property now owned exclusively by the non-debtor spouse. Nothing in the article limits such a creditor's right to the not-yet-partitioned property; therefore, he can apparently *853 follow it even after partition. This gives separate debtor spouses and their creditors far greater rights than those enjoyed by husbands and their separate creditors prior to the 1980 revision; the result is at once bad law and bad economics....
Before 1980, a husband who ceased to be head and master of the former community property upon dissolution of the regime had no right to use more than his own one-half interest in the former community property to pay his separate obligations; nor had his creditor any right against his wife's interest. 26 Loy.L. Rev. at 507-508. Our emphasis.
The legislature's intent to protect creditors in the second paragraph of Art. 2357 is suggested in 42 La.L.Rev., Termination of the Community, supra, at 793-794:

Article 2357 reflects a creditor-oriented scheme, an orientation which pervades the entire scope of the revisions. Evidence of the concern for creditors' rights is found in the second paragraph of article 2357, under which a spouse who disposes of property of the former community for a purpose other than the satisfaction of a community obligation becomes liable for all obligations incurred by the other spouse up to the value of the disposed property. Our emphasis.
Professor Riley's Analysis, supra, describes the second paragraph of Art. 2357 as "a valiant attempt to preserve for all creditors the entire assets of the former community, by imposing upon the spouse who disposes of them for other purposes a penalty in the form of personal liability for all obligations, separate and community, incurred by the other spouse, up to the value of the property thus disposed." 26 Loy.L.Rev. at 512, with our emphasis.
When the first two paragraphs of Art. 2357 are read together, it is apparent that the non-debtor spouse is not personally liable for separate or community debts incurred by the other spouse unless the non-debtor spouse has disposed of former community property, which would have been available to satisfy all pre-termination obligations incurred by either spouse, and has done so for a purpose other than the satisfaction of community obligations. If personal liability attaches, it extends to the value of the former community property which is no longer available to the creditor, and not to the value of the non-debtor spouse's interest in the entire community estate, as plaintiff argues.
By the community property law revisions the legislature protects creditors, as noted above, but some limitations are placed on the creditor's recourse against the non-debtor spouse, according to several members of the advisory committee of the joint legislative subcommittee that recommended to the legislature Act 709 of 1979 and its predecessor, Act 627 of 1978:
[U]nder the 1978 enactment, improvident credit transactions of either the husband or the wife can cause the loss of accumulated community assets and result in the garnishment of the salaries of both.... Act 627, however, limits the extent of possible injury for it does not personally obligate the spouse who was not a party to the transaction. Bilbe, "Management" of Community Assets Under Act 627, 39 La.L.Rev. 409 (1979), at 411, 413. Our emphasis.
A proposal to impose responsibility equally on spouses at dissolution for one-half of the community obligations, regardless of who contracted them, was rejected by the legislature. Spaht and Samuel, Equal Management Revisited: 1979 Legislative Modifications of the 1978 Matrimonial Regimes Law, 40 La. L.Rev. 83 (1979), at 122.
Considering the legislature's rejection of the proposal to make the non-debtor spouse personally liable for half of the community obligations incurred by the other spouse, we cannot conclude the legislature intended to impose personal liability for the other spouse's separate obligations. We conclude the legislature imposed personal liability on the non-debtor spouse in only two circumstances:
for separate or community obligations incurred by the other spouse if the non-debtor spouse disposes of former *854 community property other than for the satisfaction of community obligations (second paragraph of Art. 2357); or
for half of each community obligation incurred by the other spouse if the non-debtor spouse assumes this liability in writing (third paragraph of Art. 2357).
Even should we assume the debt was a community obligation, we have no evidence that the wife assumed responsibility for half of it. We have no evidence that the wife disposed of any property of the former community. On this record, she cannot be cast in judgment on the notes although, as she concedes, her interest in the former community property may be seized to satisfy the judgment against the husband.
In Shel-Boze, Inc. v. Melton, 509 So.2d 106 (La.App. 1st Cir.1987), the husband's creditor sued and obtained a judgment against the husband and his corporation. The wife was not named in the suit or in the judgment. The creditor executed on the judgment by garnishing the wife's wages. After the garnishment, the spouses were legally separated. The creditor was allowed to keep the funds garnished before the legal separation because those earnings were community property. It was held that after the legal separation, the wife's earnings became her separate property and were not available to satisfy the husband's debt.
The seizure of community assets to satisfy a judgment against one spouse may raise due process problems if the other spouse is not notified of the initial action or of the seizure. See Hargrave, Developments in the Law, 1985-1986Louisiana Constitutional Law, 47 La.L.Rev. 333 (1986). Such a challenge was raised, but was rejected, in Shel-Boze, Inc., supra. We do not have the problem in this appeal.
Professor Hargrave's article makes these observations about Art. 2357:
The basic policy is simply that community assets are available to satisfy the debts of each spouse.
. . . . .
It would be hard to defend a scheme making spouses personally liable for the debts of the other, but the Louisiana scheme does not do this. It only makes the existing community assets available to the creditor. 47 La.L.Rev. at 335. Emphasis in original.
Compare the effect of Art. 2357 on the administration of a deceased spouse's succession discussed in Cavanaugh, Problems in the Law of Successions: Succession Representatives, Surviving Spouses, and Usufructuaries, 47 La.L.Rev. 21 (1986), at 37-38, fn. 51. See First Guaranty Bank v. Alford, 366 So.2d 1299 (La.1978), and Gentilly Ornamental Iron Works, Inc. v. Hawkins, 273 So.2d 634 (La.App. 4th Cir. 1973).
Promissory notes signed by only one spouse were involved in Fowler v. Dunshee, 511 So.2d 1323 (La.App. 5th Cir.1987), and First Sec. Bank and Trust Co. v. Dooley, 480 So.2d 842 (La.App. 2d Cir. 1985). In Fowler, the husband signed the note but the creditor sued only the wife. The trial court found the wife was personally liable for the community debt. On appeal, the judgment was amended to limit the wife's liability "to the extent of her interest in the property of the former community[.]" The court summarized the law:
[T]he spouse who has not incurred the obligation becomes personally liable only by disposing of assets of the former community for a purpose other than payment of community obligations. Therefore, whether the obligation incurred by Mr. Dunshee is deemed a separate or a community obligation is immaterial. The assets of the former communitynot Ms. Dunshee's separate property nor Ms. Dunshee personallyare liable for the debt. 511 So.2d at 1325. Citations omitted.
The plaintiff in Dooley, supra, sued both spouses on notes signed only by the wife. Judgment was rendered against the wife "individually" and against the husband and wife "in their capacity as owners, co-partners and managers of the community in existence at the time the obligations were *855 incurred." This court amended the judgment to limit the husband's liability "to the extent of his interest in the community property" for these reasons:
Mrs. Dooley is liable both individually and as co-partner and/or owner of the community, since she is the spouse who incurred the obligations. The debts may be satisfied from her separate property or from her interest in the community. Mr. Dooley, on the other hand, is only liable up to the "value" of his interest in the former community. See Spaht and Samuels, Equal Management Revisited, 40 La.L.Rev. 83, 126 (1979); and Bridgeman & Conway v. Korner Realty Co., 405 So.2d 344 (La.App. 4th Cir.1981). 480 So.2d at 845. Emphasis added.
The cited portion of the law review article discusses personal liability of the non-debtor spouse who has disposed of former community property other than to pay community debts. We did not mention in Dooley any factual basis for applying this provision of Art. 2357. If Mr. Dooley disposed of community property other than to pay community debts, his personal liability would correspond to the value of the property he disposed of, not to the value of his entire interest in the former community.
Bridgeman, cited in Dooley, considered whether a separation of property agreement effective January 1, 1980, precluded the husband's judgment creditor from garnishing the wife's wages after that date under a garnishment order rendered in 1979. The court interpreted Art. 2357, which also took effect on January 1, 1980, to mean that the non-debtor spouse's separate property could not be seized to satisfy obligations incurred by the other spouse. The court found the creditor had no vested right to the wife's unearned wages and discontinued the garnishment after her earnings became her separate property. Bridgeman does not otherwise address the issue of the non-debtor spouse's liability for the other spouse's obligations.
Dooley should not be construed to support plaintiff's argument that the non-debtor spouse who has not disposed of community assets after the community regime ends is personally liable in an amount of money not exceeding his or her interest in the entire former community.

CONCLUSION
Earnings or other assets acquired by a spouse after the community regime ends are classified as separate property. A money judgment against the ex-wife would subject her separate property to the risk of seizure to satisfy the husband's separate debt, contrary to Art. 2357. The rejection of plaintiff's demands against the ex-wife in the judgment was correct and does not preclude plaintiff from seizing the interest of the ex-wife in former community property to satisfy the judgment against plaintiff's son. See Bridgeman & Conway, supra, and Shel-Boze, Inc., supra.
At plaintiff's cost, the judgment is AFFIRMED.