pFRED C. SEXTON, JR., Judge Pro Tern.
This is an appeal from a summary judgment decreeing a Roth individual retirement account exempt from seizure. We affirm the result reached by the trial court.
FACTS AND PROCEDURAL HISTORY
On November 16, 1998, plaintiff, Ann Mexic, filed a petition in the Nineteenth Judicial District Court to make executory a 1990 judgment in her favor and against defendant, Simon Mexic, in the amount of $323,054.80, rendered by the Civil District Court for the Parish of Orleans, in a suit partitioning community property following termination of the matrimonial regime.[2] On that same date, plaintiff filed a petition for garnishment, naming as garnishee, A.G. Edwards & Sons, Inc. (A.G.Edwards), an investment brokerage firm. Plaintiff also requested the issuance of á writ of fieri facias in the amount of the judgment, subject to a credit of $240,365.34 for payment(s) previously received.
On November 18, 1998, the trial court issued an order making the 1990 judgment executory, and on November 24, 1998, issued an order naming A.G. Edwards as garnishee and ordering A.G. Edwards to answer plaintiffs garnishee interrogatories. Although not in the record, a writ of fieri facias was also apparently issued to A.G. Edwards seizing property in its possession that was owned by Mr. Mexic. On December 21, 1998, A.G. Edwards filed an answer, denying that it was in possession of sums sufficient to satisfy the writ, but acknowledging possession of one “Roth Rollover IRA Account” belonging to Simon Mexic, which was valued at approximately $74,773.00 on December 11, 1998.
IsOn December 22, 1998, Simon Mexic filed a pleading styled as a “Petition of Intervention” in the suit, alleging that the individual retirement account held by A.G. Edwards is exempt from seizure by law as an individual retirement account and seeking a court order declaring its exempt status.[3] Thereafter, on January 5, 2000, Mr. Mexic filed a motion for summary *688 judgment seeking to have the seizure of his individual retirement account vacated, recalled, and annulled.
A summary judgment was signed in favor of Simon Mexic on April 11, 2000, “vacating, recalling, and annulling the writ of seizure and notice of seizure in garnishment seizing the individual retirement account and funds of Simon Mexic at A.G. Edwards & Sons, Inc.” No written or oral reasons for judgment appear in the district court record; however, the minutes of court for March 21, 2000, state that the court “carefully reviewed this matter and is firmly of the opinion that [mover’s Roth] IRA is exempt from seizure, in accordance with R.S. 13:3881(D)....” The evidence submitted to the court in support of the motion for summary judgment included: the answers to the garnishment interrogatories filed by A.G. Edwards & Sons, Inc.; the affidavit of Simon Mexic, defendant; the affidavit of David Marshall Charlton, a tax attorney; and the affidavit of Emile Bruneau, Speaker Pro Tem. of the Louisiana House of Representatives.
In his affidavit, Simon Mexic stated that, at the time of the garnishment, he had maintained an individual retirement account with A.G. Edwards for fifteen years. Mr. Mexic further stated that he had issued instructions to A.G. Edwards at the end of 1998 to “roll over” this account into a Roth IRA. Mr. Mexic stated that he never intended to convert his exempt individual retirement account into a nonexempt account.
|4In his affidavit, Emile Bruneau, Speaker Pro Tem. of the Louisiana House of Representatives, stated that he was lead author of 1999 La. Acts, No. 63, which was intended, among other things, to protect an individual’s Roth retirement account from seizure as a “tax-deferred arrangement.” David Marshall Charlton, in his affidavit, stated that in his opinion as a Board Certified Tax Specialist, under Act No. 63, in order for a “tax-deferred arrangement” to be exempt from seizure, it must be an arrangement “under which United States income tax on the tax-deferred arrangement is deferred.” [4]
Plaintiff appeals the summary judgment, urging the following assignments of error:
1) The trial court erred in determining that Simon Mexic’s Roth IRA was exempt from seizure pursuant to the provisions of La. R.S. 13:3881 and La. R.S. 20:33 as said statutes were worded on the date of seizure, December 11, 1998 and/or as said statutes were amended by virtue of Act 63 of 1999.
2) The trial court erred in determining that Act 63 of Í999, if it indeed amended La. R.S. 13:3881 and La. R.S. 20:33 by exempting Roth IRA’s [sic] from seizure, retroactively applied such seizure exemption to the seizure of Simon Mexic’s Roth IRA that occurred prior to the introduction or enactment of the amending legislation.
3) The trial court erred in determining that Act 63 of 1999, insofar as it may have created a seizure exemption for Roth IRA’s [sic], was interpretive and should therefore be applied retroactively.
4) The trial court erred in failing to find that Simon Mexic had indeed completed the “roll-over” of his traditional IRA into a Roth IRA.
*689 5) The trial court erred in failing to find that, if the rollover from the traditional IRA to the Roth [IRA] did occur, then all of the assets so transferred would also not be exempted from seizure because such transfer had to have occurred less than one year prior to seizure.
6) The trial court erred in failing to find that, if the rollover from the traditional to the Roth IRA had not actually occurred, there was a material issue of fact as to whether some or all of the assets in said IRA did not constitute capital gains or interest thereon and, therefore, were not exempt from seizure.
| ¡¿PROCEDURAL POSTURE
At the outset we note that the filing by Mr. Mexic of a petition of intervention was procedurally incorrect. A third person having an interest in a pending action may intervene in the action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto. LSA-C.C.P. art. 1091. As Mr. Mexic is the party defendant in the suit, it was unnecessary for him to intervene in the proceeding. In order to contest the validity of the issuance of a writ of seizure, a defendant ordinarily files a motion to dissolve the writ. See, e.g., Louisiana Savings Association, Inc. v. Bluebonnet Holding Partnership, 546 So.2d 869, 871 (La.App. 1st Cir. 1989), writ denied, 550 So.2d 655 (La.1989); Higley v. Higley, 95-0965 (La.App. 4th Cir.6/29/95), 658 So.2d 42, 44, writ denied, 95-2266 (La.11/27/95), 668 So.2d 732. See also Lor, Inc. v. Martin Exploration Company, 489 So.2d 1326, 1328 (La.App. 1st Cir.1986), writ denied, 493 So.2d 1217 (La.1986), appeal dismissed, 480 U.S. 912, 107 S.Ct. 1363, 94 L.Ed.2d 680 (1987); Smith v. Utility & Maintenance Contractors of America, Inc., 301 So.2d 906, 913 (La.App. 2d Cir.1974), writ refused, 305 So.2d 539 (La.1975); Daniels v. Chandler, 502 So.2d 617, 618 (La.App. 3rd Cir.1987); Carrier Leasing Corporation v. Ready-Mix Companies, Inc., 372 So.2d 601, 603 (La.App. 4th Cir.1979), writ denied, 375 So.2d 943 (La.1979); Sarpy Properties, Inc. v. Diamond Shoe Stores of Louisiana, Inc., 99-1304 (La.App. 5th Cir.5/17/00), 761 So.2d 769, 772, writ denied, 2000-1760 (La.9/22/00), 768 So.2d 604. However, since there were no factual issues presented to the trial court and no objection was made to the decision subsequently rendered on motion for summary judgment, we will review the substance of the judgment which, in effect, dissolved the seizure caused by the garnishment. See LSA-C.C.P. art. 2164. See also J.M. Brown Construction Company v. D & M Mechanical Contractors, Inc., 222 So.2d 93, 100 (La.App. 1st Cir.1969).
^EXEMPTION LEGISLATION
At the time of the seizure in this case, LSA-R.S. 13:3881 and LSA-R.S. 20:33 provided, in pertinent part:
§ 3881. General exemptions from seizure
[[Image here]]
D. (1) The following shall be exempt from all liability for any debt except alimony and child support: all pensions, all proceeds of and payments under annuity policies or plans, all individual retirement accounts, all Keogh plans, all simplified employee pension plans, and all other plans qualified under Sections 401 or 408 of the Internal Revenue Code. However, an individual retirement account, Keogh plan, simplified employee pension plan, or other qualified plan is only exempt to the extent that contributions thereto were exempt from federal income taxation at the time of contri- *690 button, plus interest or dividends that have accrued thereon.
(2) No contribution shall be exempt if made less than one calendar year from the date of filing for bankruptcy, whether voluntary or involuntary, or less than one calendar year from the date writs of seizure are filed against such account or plan.
§ 33. Pension, annuity, and gratuity payment by employers
The following shall be exempt from all liability for any debt except alimony and child support:
(1) All pensions, all proceeds of and payments under annuity policies or plans, all individual retirement accounts, all Keogh plans, all simplified employee pension plans, and all other plans qualified under Sections 401 or 408 of the Internal Revenue Code. However, an individual retirement account, Keogh plan, simplified employee pension plan, or other qualified plan is only exempt to the extent that contributions thereto were exempt from federal income taxation at the time of contribution, plus interest or dividends that have accrued thereon. No contribution shall be exempt if made less than one calendar year from the date of filing for bankruptcy, whether voluntary or involuntarily, or less than one calendar year from the date writs of seizure are filed against such account or plan.
These statutes were amended by 1999 La. Acts, No. 63, and now provide, in pertinent part:
§ 3881. General exemptions from seizure
[[Image here]]
D. (1) Except as provided in Paragraph 2 of this Subsection, the following shall be exempt from all liability for any debt except alimony and child support: all pensions, all tax-deferred arrangements, annuity contracts, and all proceeds of and payments |7under all tax-deferred arrangements and annuity contracts, as defined in Paragraph 3 of this Subsection.
(2) No contribution to a tax-deferred arrangement or to an annuity contract, as defined in Paragraph 3 of this Subsection, shall be exempt if made less than one calendar year of the date of filing for bankruptcy, whether voluntary or involuntary, or the date writs of seizure are filed against the tax-deferred arrangement or annuity contract. A transfer from one tax-deferred arrangement to another or from one annuity contract to another shall not be considered a contribution for purposes of this Paragraph.
(3) The term “tax-deferred arrangement” includes all individual retirement accounts or individual retirement annuities of any variety or name, whether authorized now or in the future in the Internal Revenue Code of 1986, or the corresponding provisions of any future United States income tax law, including balances rolled over from any other tax-deferred arrangement as defined herein, money purchase pension plans, defined benefit plans, defined contribution plans, Keogh plans, simplified employee pension (SEP) plans, simple retirement account (SIMPLE) plans, or any other plan of any variety or name, whether authorized now or in the future in the Internal Revenue Code of 1986, or the corresponding provisions of any future United States income tax law, under which United States income tax on the tax-deferred arrangement is deferred. The term “annuity contract” shall have the same definition as defined in R.S. 22:647(B).
§ 33. Pension, annuity, and gratuity payment by employers
*691 The following shall be exempt from all liability for any debt except alimony and child support:
(1) All pension tax-deferred arrangements and annuity contracts, as defined and to the same extent prescribed in R.S. 13:3881.
Section 4 of 1999 La. Acts, No. 63, provided, “This Act is interpretive and shall apply to any annuity contract or tax-deferred arrangement covered by the provisions of this Act which is in existence on or prior to the effective date of this Act.”
We find this language to be dis-positive of the issue as to whether the 1999 amendment was applicable to Simon Mexic’s Roth individual retirement account that became the subject of the 1998 garnishment proceeding. By its own language, the 1999 amendment is “interpretive” and applies to tax-deferred arrangements “in existence on or prior to” the effective date of the act. (Emphasis added.) Interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary. La. C.C. art. 6; Segura v. Frank, 93-1271 (La.1/14/94), 630 So.2d 714, 721, cert. denied sub nom., Allstate Insurance Company v. Louisiana Insurance Guaranty Association, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). Where the Legislature has expressed an intent concerning the retroactive or prospective application of the law, the law must be characterized as the Legislature intended. Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724, 728, cert. denied, 524 U.S. 940, 118 S.Ct. 2347, 141 L.Ed.2d 717 (1998); Manuel v. Louisiana Sheriff’s Risk Management Fund, 95-0406 (La.11/27/95), 664 So.2d 81, 86. Consequently, the 1999 amendments to LSA-R.S. 13:3881 and LSA-R.S. 20:33 must be given retroactive effect and govern the exempt status of Mr. Mexie’s Roth individual retirement account.[5]
We reject plaintiffs argument to the effect that application of the amendment to the exemption statutes, affecting her garnishment seizure, would contravene “federal and state constitutional restrictions against the enactment of ex post facto laws.” A similar argument was made and rejected in Hooter v. Wilson, 273 So.2d 516 (La.1973).
The dispute litigated in Hooter arose following the 1970 amendment of LSA-R.S. 13:3881 to change the amount of wages exempt from seizure from 80%, or a minimum of $100 per month, to 75%, or a minimum of $70 per week. The plaintiff in Hooter argued that a garnishment judgment obtained prior to the amendment gave him a vested right in the garnishment of 20% of defendant’s wages, excepting only $100 per month from the seizure under the former garnishment statute. Hooter v. Wilson, 273 So.2d at 518. The supreme court found that the 1970 amendment did not divest vested rights and that a retroactive application of the amendment to a judgment of garnishment was not unconstitutional. In so holding, the Hooter court characterized the right of seizure 19under a garnishment judgment as aleatory, entitling a creditor/garnishor only to the receipt of any non-exempt sums. Hooter v. Wilson, 273 So.2d at 522.
Likewise, we find herein that the interpretive amendment to LSA-R.S. 13:3881 and LSA-R.S. 20:33 is applicable to the subject garnishment proceeding even though the garnishment proceeding *692 was begun prior to the effective date of the 1999 amendment. Having decided that the exempt status of Mr. Mexic’s Roth individual retirement account was governed by LSA-R.S. 13:3881, as amended by 1999 La. Acts, No. 63, we must next determine whether the individual retirement account was in fact exempt under that statute.[6]
Pursuant to LSA-R.S. 13:3881(D)(1), “all pensions, all tax-deferred arrangements, annuity contracts, and all proceeds of and payments under all tax-deferred arrangements and annuity contracts, as defined in Paragraph 3” of that subsection are exempt from liability for debts. It is clear from a reading of this language that an individual retirement account can only be exempt under these provisions if it meets the definition of “tax-deferred arrangement.” Paragraph (3) of LSA-R.S. 13:3881(D) includes “all individual retirement accounts” within the definition of “tax-deferred arrangement.” (Emphasis added.) However, plaintiff argues that such “individual retirement accounts” must also be accounts “under which United States income tax on the tax-deferred arrangement is deferred,” in accordance with the phrase that appears at the conclusion of the first sentence of LSA-R.S. 13:3881(D)(3). We do not agree.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. The words of a law must be given their generally | ^prevailing meaning, and, words of art and technical terms must be given their technical meaning when the law involves a technical matter. LSA-C.C. art. 11. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. Laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13.
When interpreting a law, the court should give it the meaning the lawmaker intended. Bunch v. Town of St Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984). However, the intention of a legislator in the enactment of legislation, not expressed to others, though factual, is inadmissible as being irrelevant and of no probative value. Nevertheless, that same intent expressed to the appropriate legislative committees and both houses is admissible as an aid to the courts in determining the true legislative intent. Here, it is the expression of both the intent and purpose of the legislation to the legislature that aids the court in its constitutional function of interpretation. It is not the opinion of the witness-legislator as to what the legislature intended that is admissible, but rather the factual evidence considered by the legislature in enacting legislation. Authement v. Davidson, 366 So.2d 986, 989 (La.App. 1st Cir.1978).
In the instant case, the district court was presented with the affidavit of Representative Bruneau, giving his opinion regarding the state of the law in this regard and his opinion as to what the legislature intended in enacting Act No. 63. Representative Bruneau’s affidavit did not recite any factual evidence considered by the legislature in enacting the legislation. *693 Therefore, the affidavit was improperly-considered by the trial court.
The minutes of the Senate Committee on Judiciary B for May 11, 1999, reflect that, with regard to Act No. 63 (House Bill No. 217), “Representative Bruneau presented this legislation and stated it exempts all tax-deferred arrangements and annuity contracts from seizure in certain cases. This deals with annuities and ROTH IRA’s [sic].” Thus, it is evident that this legislative |n committee believed annuities and Roth individual retirement accounts were to be exempted by the proposed legislation.
Our examination of the wording of LSA-R.S. 13:3881 also leads us to conclude that the legislature intended to exempt Roth individual retirement accounts. The first' sentence of LSA-R.S. 13:3881(D)(3) clearly defines “tax-deferred arrangement” in terms of eight separate items: (1) all individual retirement accounts or individual-retirement annuities of any variety or name, whether authorized now or in the future in the Internal Revenue Code of 1986, or the corresponding provisions of any future United States income tax law, including balances rolled over from any other tax-deferred arrangement as defined herein; (2) money purchase pension plans; (3) defined benefit plans; (4) defined contribution plans; (5) Keogh plans; (6) simplified employee pension (SEP) plans; (7) simple retirement account (SIMPLE) plans; or (8) any other plan of any variety or name, whether authorized now or in the future in the Internal Revenue Code of 1986, or the corresponding provisions of any future United States income tax law, under which United States income tax on the tax-deferred arrangement is deferred.
Although the manner in which LSA-R.S. 13:3881(D)(3) is phrased lends itself to plaintiffs argument, we find the eight enumerated “tax-deferred arrangements” to be separate and distinct one from the other. .In comparison with Act No. 63,- the prior law clearly itemized the exempt plans and stated in a separate sentence: “However, an individual retirement account, Keogh plan, simplified employee pension plan, or other qualified plan is only exempt to the extent that contributions thereto were exempt from federal income taxation at the time of contribution, plus interest or dividends that have accrued thereon.” (Emphasis added.) If the 1999 Legislature had intended to carry forward, into Act No. 63 that universal qualification, it could easily have done so in the same unmistakable manner. Instead, the legislature chose to append this language to the concluding catch-all category. Moreover, the legislature’s placement of the liaphrase “whether authorized now or in the future in the Internal Revenue Code of 1986, or the corresponding provisions of any future United States income tax law...” both in the beginning and the end of the sentence reinforces the idea that if the legislature had intended the conclusory phrase to modify “all individual retirement accounts,” it would have placed that phrase in both clauses, as well.
Laws are presumed to be passed with deliberation and with full knowledge of other existing laws on the same subject. We give harmonious effect to all acts on a subject when reasonably possible. Theriot v. Midland Risk Insurance Company, 95-2895 (La.5/20/97), 694 So.2d 184, 186; Southlake Development Company v. Secretary, Louisiana Department of Revenue, 98-2158 (La.App. 1st Cir.11/5/99), 745 So.2d 203, 206, writ denied, 1999-3405 (La.2/4/00), 754 So.2d 235.
The Roth individual retirement account was created in the U.S. Internal Revenue Code by the enactment of 26 U.S.C.A. 408A in 1997. This law states that as a general rule “[e]xcept as provided in this *694 section, a Roth individual retirement account shall be treated for purposes of this title in the same manner as an individual retirement plan.” Also, 26 U.S.C.A. 408A(d)(3)(A)(iii) provides with respect to rollovers from an individual retirement account other than a Roth individual retirement account:
[U]nless the taxpayer elects not to have this clause apply for any taxable year, any amount required to be included in gross income for such taxable year by reason of this paragraph for any distribution before January 1, 1999, shall be so included ratably over the 4-taxable year period beginning with such taxable year.
Thus, rollover contributions from a regular individual retirement account to a Roth individual retirement account completed prior to January 1,1999, are eligible for a deferment of taxes over a four-year period. Hence, even under plaintiffs interpretation of LSA-R.S. 13:3881, defendant’s Roth individual retirement account was a “tax-deferred arrangement” since it qualified for a four-year tax deferment.
| iaIf we were to adopt the position espoused by plaintiff, the result would be that Roth accounts eligible for tax deferment under 26 U.S.C.A. 408A(d)(3)(A)(iii) would be exempt from seizure under LSA-R.S. 13:3881 while all other Roth accounts would not. We do not believe the legislature intended such a result. We therefore conclude that all Roth individual retirement accounts are exempt from seizure under LSA-R.S. 13:3881.[7]
CONCLUSION
For the reasons assigned herein, the judgment of the trial court vacating, recalling, and annulling the writ of seizure and notice of seizure in garnishment, in favor of defendant/appellee, Simon Mexic, is affirmed. All costs of this appeal are to be borne by plaintiff/appellant, Ann Mexic.
AFFIRMED.

. The Civil District Court for the Parish of Orleans found plaintiff to be entitled to a net reimbursement in the amount of $586,274.52. However, Mr. Mexic appealed the judgment to the Fourth Circuit Court of Appeal, resulting in an amendment reducing the amount of the judgment to $323,054.80. Mexic v. Mexic, 577 So.2d 1046, 1054 (La.App. 4th Cir.1991).

. We also note that Mr. Mexic filed a “First Amended and Supplemental Petition of Intervention” on April 1, 1999, alleging the debt owed to plaintiff had been satisfied and seeking proof of any alleged balance. The disposition of this issue is not apparent from the record, and since this argument was not raised on appeal, the issue is not before this court for resolution. Nevertheless, we note that the statement of sums due submitted by plaintiff in her petition for garnishment shows the addition of some $187,410.44 in interest onto the judgment amount. However, neither the original judgment, nor the judgment of the appellate • court reflect that interest was awarded. With the exception of judgments rendered in tort actions, in Louisiana, interest is due on a judgment only when the judgment so provides. LSA-C.C.P. art. 1921; LSA-R.S. 13:4203; Lovell v. Lovell, 545 So.2d 1314, 1316 (La.App. 1st Cir.1989); Davis v. LeBlanc, 149 So.2d 252, 253 (La.App. 3d Cir. 1963).

. We note that Mr. Charleton's affidavit should not have been considered by the trial court. The interpretation of domestic law is the duty of the court. See Wilson v. Wilson, 542 So.2d 568, 573 (La.App. 1st Cir.1989).

. We note that the court in In re Celano, 2000 WL 193068 (E.D.La.2000), appeal dismissed, 216 F.3d 1080 (5th Cir.2000), also concluded that 1999 La. Acts, No. 63 applies retroactively.

. Since LSA-R.S. 20:33 references the definitions contained in LSA-R.S. 13:3881 for the determination of exempt status, our focus is on the latter.

. Having reached this conclusion, we find it unnecessary to address plaintiff’s remaining assignments of error based on arguments to the contrary.