EDWIN A. LOMBARD, Judge.
liOn appeal, the plaintiffs challengé the trial court judgment maintaining the defendants’ exception of lack of procedural capacity. After review of the record in light of the applicable, law and arguments of the parties, the trial court judgment is affirmed in part and reversed in part.

Relevant Facts and Procedural History

On March 8, 2013, Juan Joseph Hughes struck a parked car and the 2009 Chevrolet Cobalt automobile he was driving burst into flames.[1] On March 3, 2014, Joseph *800 and Cherryn Burkette filed a petition naming General Motors, LLC, and Banner of N.O., LLG d/b/a Banner Chevrolet as defendants and claiming that the injurie» of their son Juan Joseph Hughes were caused by the defendants’ negligence and “as a result of the defendant’s [sic] negligence petitioner was forced to seek professional medical attention for injuries sustained in this accident.”[2] On March 31, 2014, the defendants filed exceptions of vagueness and | glack of procedural capacity, pointing out that the plaintiffs’ last name (Burkette) differed from that of their purported son, the decedent (Hughes) in this case. By amended petition filed on April 23, 2014, the plaintiffs eliminated the assertion that Mr. Hughes sought professional medical attention as a result of the accident. In response to the amended petition, the defendants again filed exceptions of vagueness and lack of procedural-capacity on May 19, 2014, pointing out that the amended petition “does not establish that Juan Joseph Hughes was the child of Joseph Burkette and Cherryn Burkette.” By amended petition filed on July 21, 2014, the plaintiffs asserted their entitlement “to damages- for the wrongful, death of their child, Juan Joseph Hughes, and for the suffering of their child between the incident - and his death.” In addition, the plaintiffs asserted that, Mrs. Burkette is the biological mother of the decedent Juan Joseph Hughes, that although she was married to Jerome Hughes at the time of the decedent’s birth (June 22, 1985) she was in a relationship with Joseph Burkette, that the decedent’s name merely reflected her marital status at the time of the decedent’s birth, and that she divorced Mr. Hughes in 1988,[3] In support of the amended petition, the plaintiffs attached (1) an unverified copy of the decedent’s birth certificate showing Jerome Hughes Las his father; (2) an affidavit signed by Mrs. Burkette on June 17, 2014, stating that Mr.. Burkette was the decedent’s biological father; and (3) an Act . of Acknowledgment signed by Mr. Burkette on July 11, 2014. After a hearing, on January 23, 2015, the trial court issued a “Judgment With Reasons” maintaining the exception of lack of procedural capacity, stating as follows:
The Court has considered the pleadings, the argument of counsel, the law, and finds that this matter is distinguishable from Udomeh v. Joseph, [2011-2839 (La.10/26/12) ], 103 So,3d 343. Although this suit was timely filed by Cherryn and Joseph Burkette within one year of *801 the death of. their “son,” Juan Joseph Hughes; [sic] unlike the child in Udo-meh v. Joseph, Juan Joseph Hughes was presumed to be the child, of another man, i.e., Jerome Hughes, and therefore Jospeh Burkette was required by [La. Civ.Code art. 198] to institute an action within one year from the day of the birth of Juan Joseph Hughes or within one year from the. time he know that Juan Joseph .Hughes was his son and he did not, and therefore:
IT IS ORDERED, ADJUDGED AND DECREED that the Exception of Vagueness be, and the same is hereby OVERRULED.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Exception of Lack of Procedural Capacity be, and the same is hereby MAINTAINED.
The plaintiffs timely appeal this judgment.

Discussion

The plaintiffs argue on'appeal that the trial court erred because their initial pleading that their “son” was injured in the accident was sufficient to set forth a filiation action within the required time period of La. Civ.Code art. 198. Further, the plaintiffs claim that the trial court erred in distinguishing Udomeh because “Whether or not the wife had a husband at the time she gave birth to the child should not affect the underlying reasons for allowing the father to prove his filiation in the wrongful death action."
|4Tq recover under a claim for wrongful death and survival, a plaintiff must fall within the class of persons designated as a beneficiary under La. Civ.Code arts. 2315.1 and 2815.2; thus when (as apparently in this case) the decedent leaves no surviving spouse or child, the decedent’s surviving father and mother are the proper beneficiaries to bring a wrongful'death and survival-action. Id. Filiation is the legal relationship between a child and his parent, La. Civ.Code art. 178, and is established by proof .of maternity, paternity, or adoption. La. Civ.Code art. 179. La. Civ.Code art. 198, enacted in 2005 as part of a comprehensive revision[4] of Title VII, Book I of the Civil Code, provides:
A man.may institute an action to establish his paternity of a child at any time except as provided in this Article. The action is strictly personal.

If the child is presumed to-be the child of another man, the action shall be instituted within one year from the day of the birth of the child. Nevertheless,, if the mother in bad faith deceived the father of the child regarding his paternity, the action shall be instituted urithin me year from the day the father knew or should have known of his paternity, or within ten years from the day of the birth of the child, which ever first occurs. ■ • ■

In all cases, the action shall be instituted no later than one year from the day of the death of the child.
The time periods in this Article are perempiive.
La. Civ.Code art. 198 (emphasis added.)
The revision comments to La Civ.Code art. 198 specifically state that the purpose *802 of requiring a putative father to timely file an avowal action in order to bring a wrongful death and survival action is “that a father who failed during a child’s life to assume his parental responsibilities should not be permitted unlimited time to institute an action to benefit from the child’s death.” La. Civ.Code art. 198, Revision Comments (d).
In the present case, Mr. Burkette never filed an avowal action and, although Mrs. Burkette’s first marriage was purportedly . dissolved by divorce when the decedent was three years old, the decedent retained his legal father’s name. There is nothing in the pleadings or record to indicate that the decedent’s relationship to his legal father was dissolved at the time of the divorce or that a filial relationship was established between the decedent and Mr. Burkette or that any relationship existed beyond the fact of Mr. Burkette’s marriage to the decedent’s mother. Udomeh is not relevant to this case because, unlike the deceased child in Udomeh, the decedent in this case had a presumed father (Mr. Hughes) and was beyond the age of ten. Thus, a filiation action by Mr. Burk-ette was perempted long before the decedent’s death and this lawsuit.[5] The plaintiffs’ assertion that the mother’s marriage at the time of the decedent’s birth to another man should make no difference is ill-conceived. As the Louisiana Supreme Court observed, the articles of the Louisiana Civil Code are “part of a complete system and must be construed with reference to each other and harmonized with its general purpose.” Udomeh, 2011-2839, p. 6, 103 So.3d at 347 (citation omitted). In Louisiana, marriage is a legal relationship and, as such, “subject to special rules prescribed by law.” La.Civ.Code art. 86. Specifically, “[t]he husband of the mother is presumed to be the father of the child born during the marriage or within three hundred days from 16the date of the termination of the marriage.” La. Civ.Code art. 185. This presumption “has been referred to as the strongest presumption in the law.” La. Civ.Code art. 185, Revision Comments (b). Clearly, the marriage of the decedent’s mother and legal father cannot be ignored or construed as meaningless.
Accordingly, the trial court did not err with regard to Mr. Burkette’s lack of procedural capacity to proceed. However, although there appears to be no dispute that Mrs. Burkette is the decedent’s mother, the defendant’s exception of lack of procedural capacity was filed as to both parents and the trial court judgment maintained that exception without distinguishing the plaintiffs or Mrs. Burkette’s apparent procedural capacity to proceed.[6] Accordingly, to the extent that the judgment maintains the exception of procedural capacity as Mrs. Burkette, it is error.

Conclusion

We affirm the trial court judgment maintaining the exception of procedural capacity with regard to Mr. Burkette but *803 reverse it with regard to Mrs. Burkette’s procedural capacity;
AFFIRMED IN PART; REVERSED IN PART.
LANDRIEU, J., concurs with reasons.

. It is not clear in the record whether the decedent was killed instantly or at some time *800 . later; the initial petition indicates only that he sought medical attention, not that he died.

. Notably, as the defendants pointed out in their exception of vagueness, thjs language is confusing because the "petitioner" in this • case (plaintiffs Joseph and' Cherryn Burkett) did not seek medical attention for, injuries sustained in the accident which occurred on March 8, 2013. By amended petition filed on August 1, 2014, the plaintiffs also named the owner of the parked car and his insurance company as defendants,

. Although-, the concurring judge insists that the decedent "most likely knew” Mr. Burkette to be his father, there is nothing in the record to support this allegation. Although the concurring judge indicates that "it is undisputed” Mr. Hughes is not the father, there is nothing to the record to suggest that his paternity was ever disputed during the decedent's lifetime. Notably/nothing has been admitted into the record pertaining to a disavowal of paternity by Mr. Hughes, custody or child support rulings in the divorce proceedings between Mrs. Burkette and Mr, Hughes, or any evidence that (even though his mother married Mr. Burkette when the decedent was a very young child) the decedent ever used Mr. Burkette's name or gave any other indication that he considered Mr. Burkette his father. Finally, there is nothing in the record to indicate Mr. Hughes’s position as to these proceedings, whether he is alive, or whether he is even aware of the lawsuit filed by his former wife and her current husband.

. In 2004, the Louisiana Legislature enacted former La. Civ. Code art. 191, which allowed a man to establish his paternity of a child, even if Ae child (as in this case) was presumed to be Ae child of anoAer man. However, even prior to this legislative enactment in 2004, a biological faAer's right to establish paternity by means of an avowal action was recognized jurisprudentially. See. T.D. v. 98-0167, pp. 2-3 (La.3/2/99),, 730 So.2d 873, 875; see also W.R.M. v. M.J.V., 06-0702 (La.3/9/07), 951 So.2d 172 (finding retroactive application of Act 530 of 2004, La. Civ.Code art. 191, to be constitutional). -

. As observed in the accompanying commentary, when (as in this case) the child is presumed to be the child of another man, strict time restrictions for an avowal action are imposed in the interest of the child. See La, Civ.Code art. 198, Revision Comments-2005. "The only exception to the time period of one year for the institution of an avowal action by the biological father is if the motion in bad faith deceives the father concerning his paternity” and then he must institute the avowal action within one year of discovering that the child is his or within ten years of the child’s birth. La. Civ.Code art. 198-Revision Comments-2005(f).

. We note that La. Civ.Code arts. 2315.1 and 2315.2 provide that the "surviving father and mother” have a right of action; nothing in this record indicates whether Mr. Hughes is alive.