JAMES M. GARNER, PETER L. HILBERT, JR., THOMAS J. MADIGAN II, STUART D. KOTTLE, JAMES EDWARD KUHN, SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C., 909 Poydras Street, Suite 2800, New Orleans, Louisiana 70112, COUNSEL FOR PLAINTIFF/APPELLEE
ROBERT I. SIEGEL, ALISTAIR M. WARD, GIEGER, LABORDE & LAPEROUSE, 701 Poydras Street, Suite 4800, New Orleans, Louisiana 70139, COUNSEL FOR INTERVENOR-APPELLANT/CATLIN SPECIALITY INS. CO.
PATRICK J. MCSHANE, DANICA BENBOW DENNY, KATHLEEN P. RICE, LAUREN GUICHARD, 3700 Energy Centre, 1100 Poydras St., New Orleans, Louisiana 70163, COUNSEL FOR INTERVENOR-APPELLANT/ALTERRA AMERICA INS. CO.
SIDNEY W. DEGAN III, KARL H. SCHMID, CATHERINE N. THIGPEN, 400 Poydras St., Suite 2600, New Orleans, Louisiana 70130, COUNSEL FOR INTERVENORS-APPELLANTS/ILLINOIS NATIONAL INS. CO. AND CHARTIS SPECIALTY INS. COMPANY
KRISTOPHER T. WILSON, HEATHER N. SHARP, LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARDSP, 601 Poydras Street, Suite 2775, New Orleans, Louisiana 70130, COUNSEL FOR INTERVENOR-APPELLANT/FIRST FINANCIAL INS. CO.
(Court composed of Chief Judge James F. McKay III, Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins )
JAMES F. MCKAY III, CHIEF JUDGE
In this arbitration case, the intervenors, Catlin Specialty Insurance Company, *787 Alterra America Insurance Company, First Financial Insurance Company, Chartis Specialty Insurance Company, and Illinois National Insurance Company, in their capacities as the alleged insurers of defendants, ReCon Engineering, Inc. and ReCon Management Services, Inc. (sometimes hereafter referred to collectively as ReCon), appeal the trial court's granting of a dilatory exception of lack of procedural capacity and its confirmation of an arbitration award in favor of plaintiff, Rain CII Carbon, L.L.C. We affirm.
FACTS AND PROCEDURAL HISTORY
In 2010, Rain started a project to build a waste heat recovery power generation unit at one of its facilities in southwest Louisiana in order to capture heat exhausted from the calcinating process and convert it to usable electricity. For the project, Rain retained the services of Recon Engineering, Inc., Turner Industries Group, L.L.C., and Victory Energy Operations, LLC.[1]
On March 15, 2013, Rain originally filed suit against ReCon, Turner, and Victory in the 14th JDC for the Parish of Calcasieu. Due to an arbitration agreement between Rain and ReCon, ReCon compelled Rain to arbitration. Rain then sought to file a direct action claims against ReCon's insurers (Catlin Specialty, Alterra America, First Financial, Chartis Specialty, Illinois National, and Imperium Insurance Company).[2] Like ReCon, the insurers successfully argued that Rain could not litigate its claims against them due to the pending arbitration. Rain then proceeded to arbitration.
Rain sought to join the insurers to the arbitration proceedings but the insurers actively and successfully opposed joinder. The R-7 Arbitrator[3] found that the insurers were non-signatory parties and, therefore, could not be compelled to join the arbitration proceeding.
Rain arbitrated its claims against ReCon at a final hearing on September 28, 2017 in New Orleans. On October 26, 2017, the Arbitrator rendered an arbitration award in favor of Rain and against ReCon in the amount of $ 4,430,404.74, representing a principal sum of $ 3,388,707.00; interest from the date of the arbitration demand in the amount of $ 638,933.74; and attorney's fees in the amount of $ 402,764.00.
On April 24, 2018, Rain filed a motion to confirm arbitration award in the Civil District Court for the Parish of Orleans. On May 14, 2018, the insurers filed a petition for intervention and attempted to oppose confirmation. The insurers took a contrary position from what they had taken in the previous proceeding. They claimed that they did not have notice of the arbitration and the arbitration award should be vacated. In addition to their petition for intervention, the insurers filed an opposition to the motion to confirm arbitration award, a motion to vacate the arbitration award, a declinatory exception of lack of jurisdiction, and peremptory exceptions of no cause of action and no right of action. In response, on June 15, 2018, Rain filed exceptions of no right of action, no cause of action, lack of procedural capacity, and prescription, along with a motion for a protective order.
*788 A hearing took place on July 6, 2018. On August 10, 2018, the trial court granted Rain's exception of lack of procedural capacity, which it found rendered the insurers' exceptions moot; granted the motion to confirm arbitration award; found Rain's other exceptions to be moot; and assessed all costs against the intervenors. It is from this judgment that the insurers now appeal.
DISCUSSION
On appeal, the insurers raise the following specifications of error: 1) the district court erred in finding the insurers-intervenors lacked the procedural capacity to oppose the confirmation of an underlying, default arbitration award against their insured; and 2) the district court erred in confirming a default arbitration award entered by an arbitrator who "manifestly disregarded the law" and lacked jurisdiction.
"The de novo standard of review ... applies to our review of the trial court's ruling on a dilatory exception of procedural capacity." English Turn Prop. Owners Ass'n v. Taranto, 16-0319, pp. 5-6 (La.App. 4 Cir. 4/19/17), 219 So.3d 381, 387, writ denied, 17-1100 (La. 10/16/17), 2017 WL 4891599, --- So.3d ---- (citing Wells v. Fandal, 13-620, p. 7 (La.App. 5 Cir. 2/12/14), 136 So.3d 83, 87 ). See also Gunasekara v. City Of New Orleans through Munster, 17-0914, p. 3 (La.App. 4 Cir. 3/28/18), 243 So.3d 623, 626 ("The standard of review of a trial court's ruling on an exception of no right of action is de novo. " (citations omitted); Woodard v. Upp, 13-0999, p. 5 (La.App. 1 Cir. 2/18/14), 142 So.3d 14, 18 ("[t]he determination of whether a party has the procedural capacity to sue or be sued involves questions of law which is reviewed under the de novo standard of review to determine whether the ruling of the trial court was legally correct.")
"The dilatory exception of lack of procedural capacity raises the issue of want of capacity of the plaintiff to institute and prosecute the action and stand in judgment, and/or challenges the authority of a plaintiff who appears in a purely representative capacity." English Turn., p. 6, 219 So.3d at 387. See also Harvey v. State, 14-0156, p. 12 (La.App. 4 Cir. 12/16/15), 183 So.3d 684, 695, writ denied, 16-0105 (La. 3/4/16), 188 So.3d 1060. The exception "tests a party's legal capacity to bring suit." Mt. Zion Baptist Ass'n v. Mt. Zion Baptist Church # 1 of Revilletown Park, 16-0151, p. 5 (La.App. 1 Cir. 10/31/16), 207 So.3d 414, 417, writ denied, 16-2109 (La. 2/3/17), 215 So.3d 697.
The insurers took a contrary position as they had taken in the previous proceeding. They claimed they did not have notice of the arbitration and that the arbitration award should be vacated, while ignoring the fact that Rain had sought to join the insurers to the arbitration. In support of the exceptions of lack of procedural capacity, no right of action, no cause of action, and prescription, Rain's central argument was that the insurers could not intervene because they were not parties to the arbitration, as required by La. R.S. 9:4209.
Under the express provisions of the Louisiana Arbitration Act[4] ( La. R.S. 9:4210 ) and Section 10 of the Federal Arbitration Act[5] (FAA), only a "party to the arbitration can file a motion to vacate, modify, or correct an arbitration award. Rain tried to join the insurers in the arbitration, but the insurers objected and successfully opposed their joinder in the arbitration.
*789 Because the insurers were not parties to the arbitration, Rain filed an exception of lack of procedural capacity, among other exceptions, in response to the insurer's intervention and motion to vacate the arbitration award. The district court correctly sustained the exception of lack of procedural capacity and granted the motion to confirm the arbitration award.[6]
"[U]nless the award is vacated, modified, or corrected" under the exclusive statutory grounds, a court must grant a motion to confirm an arbitration award as expressly provided in La. R.S. 9:4209 of the Louisiana Arbitration Law and Section 9 of the FAA. Accordingly, there was no valid motion to vacate, modify, or correct the arbitration award before the trial court because the insurers did not qualify as "part[ies] to the arbitration" capable of filing a motion to vacate the arbitration award. On that basis alone, the district court was correct in confirming the arbitration award. Affirming the district court's judgment sustaining the exception of lack of procedural capacity pretermits any consideration of the insurers' arguments for vacatur.
CONCLUSION
The district court correctly held that the insurers lacked the procedural capacity to file their motions in the judicial proceeding to confirm Rain's arbitration award. In the 14th JDC, the insurers were able to repel Rain's claims by arguing that Rain's claims against ReCon must be arbitrated. In the arbitration, however, after Rain sought to join the insurers, the insurers successfully opposed joinder to the arbitration. As a result, the insurers were not parties to the arbitration and did not have the procedural capacity to later file motions in the judicial proceeding to confirm Rain's arbitration award. Accordingly, the district court's judgment is affirmed.
AFFIRMED
DYSART, J., DISSENTS
DYSART, J., DISSENTS.
I respectfully disagree with the majority's view of La. R.S. 9:4209 as it applies to the circumstances of this case. Under this statute, "[a]t any time within one year after the award is made any party to the arbitration may apply to the court in and for the parish within which the award was made for an order confirming the award...." La. R.S. 9:4209. In this matter, none of the Insurers of ReCon Engineering and ReCon Management Services, Inc., were "part[ies] to the arbitration" which Rain CII sought to confirm in Orleans Parish Civil District Here, the insurers of Recon were simply attempting to intervene in the confirmation proceeding in the Civil District Court as an interested party.
I find nothing in the Louisiana Binding Arbitration Laws which prohibits an intervention in such an action by an interested party. In my view, the Insurers here have an interest in the pending action concerning Rain's Motion to Confirm Arbitration Award. Thus, in my opinion, the trial court erred in granting Rain's dilatory exception of lack of procedural capacity.[1]
*790 First and foremost, I do not believe there are grounds in this matter for which an exception of lack of procedural capacity would be appropriate. "The dilatory exception of lack of procedural capacity raises the issue of want of capacity of the plaintiff to institute and prosecute the action and stand in judgment, and/or challenges the authority of a plaintiff who appears in a purely representative capacity." English Turn Prop. Owners Ass'n v. Taranto , 16-0319, p. 6 (La. App. 4 Cir. 4/19/17), 219 So.3d 381, 387, writ denied , 17-1100 (La. 10/16/17), --- So.3d ----, 2017 WL 4891599. See also , Harvey v. State , 14-0156, p. 12 (La. App. 4 Cir. 12/16/15), 183 So.3d 684, 695, writ denied , 16-0105 (La. 3/4/16), 188 So.3d 1060. That is, the exception "tests a party's legal capacity to bring suit." Mt. Zion Baptist Ass'n v. Mt. Zion Baptist Church # 1 of Revilletown Park , 16-0151, p. 5 (La. App. 1 Cir. 10/31/16), 207 So.3d 414, 417, writ denied , 16-02109 (La. 2/3/17), 215 So.3d 697 (emphasis added).
Importantly, " '[l]ack of capacity" is not synonymous with no right of action." Bridges v. Anderson , 16-0432, p. 7 n.5 (La. App. 4 Cir. 12/7/16), 204 So.3d 1079, 1083, writ denied, 17-0194 (La. 3/24/17), 216 So.3d 817 ; Mt. Zion Baptist Ass'n, 16-0151, p. 5, 207 So.3d at 417. The latter, as is well-settled under Louisiana law, "serves to question whether [a] plaintiff in [a] particular case is a member of the class of persons that has a legal interest in the subject matter of the litigation." Badeaux v. Sw. Computer Bureau, Inc. , 05-0612, pp. 5-6 (La. 3/17/06), 929 So.2d 1211, 1217. The exception of lack of procedural capacity, on the other hand, examines a party's legal capacity or lack thereof. Bridges , 16-0432, p. 7n.5, 204 So.3d at 1083. The Louisiana Supreme Court has succinctly differentiated between the two exceptions:
"[T]he function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit." Hood v. Cotter , 08-0215, p. 17 (La. 12/2/08), 5 So.3d 819, 829. In contrast, an exception of lack of procedural capacity "challenges the right of a party to proceed (although the party may be asserting a real and actual interest) because of some procedural incapacity such as minority." Woodlawn Park Ltd. P'ship v. Doster Constr. Co., Inc. , 623 So.2d 645, 646 n. 5 (La.1993).
Udomeh v. Joseph , 11-2839, p. 8 n.2 (La. 10/26/12), 103 So.3d 343, 348.
In this context, I find Rain's position, in reliance on Dorvin Land Corp. v. Jefferson Parish , 469 So.2d 1011, 1013 (La. App. 5 Cir. 1985), that "[w]hen the plaintiff cannot 'show a specific assignment of the right to claim the damages from the owner [of the right], it has no procedural capacity to bring the suit' " to be misplaced. Unlike the instant matter, at issue in Dorvin was a peremptory exception of no right of action, rather than an exception of lack of procedural capacity. Dorvin recognized that, under La. C.C.P. art. 681, "an action can be brought only by a person having a real and actual interest which he asserts." Id. at 1013. There, the plaintiff claimed damages to his property sustained prior to his ownership. The Court, noting that "the landowner at the time of the alleged damages is the person with the real and actual interest to assert the claim for damages to the land," had no right of action in the matter. Id. Thus, Dorvin has no bearing on an exception of lack of procedural capacity.
Examples of cases which tested the exception of lack of procedural capacity reflect *791 that the exception challenges some legal defect or irregularity in a party's capacity in a proceeding. In Burkette v. Gen. Motors, LLC , 15-0373 (La. App. 4 Cir. 11/10/15), 179 So.3d 799, 801, for instance, the mother of a minor who was killed as a result of a single vehicle accident filed wrongful death and survival actions against the manufacturer and the seller of the vehicle her husband had been driving at the time of the accident. The husband was also named as a plaintiff and the father of the child, despite the fact that the child had been born during the mother's marriage to another man, from whom she was then divorced. Because La. C.C. art. 185 provides that "[t]he husband of the mother is presumed to be the father of the child born during the marriage" and no filiation action had been filed, the trial court properly found that the husband lacked the procedural capacity to proceed. Id. , pp. 5-6, 179 So.3d 799, 802.
Likewise, in Mt. Zion Baptist Ass'n. , an unincorporated association and two individuals appearing as representatives of the association, sought an injunction against a church prohibiting it from selling cemetery plots to non-residents or descendants of their town's original inhabitants. An exception of lack of procedural capacity was filed and granted on the basis that, under Louisiana law, only the president or another authorized officer representing the unincorporated association has the procedural capacity to institute an action on its behalf. In that case, none of the purported plaintiffs had procedural capacity - the association did not appear through its president or authorized representative, and the two individuals did not allege that either was the president or an authorized representative.
Similarly, in Woodard v. Upp , 13-0999, p. 6, 142 So.3d 14, 19, the mother of a deceased minor brought a medical malpractice action against a physician and a hospital, which was met with an exception of lack of procedural capacity. Noting that "representative claims of [the minor daughter] may only be pursued by an appointed succession representative while a succession is under administration," the court held that, because the mother "did not allege nor prove that a succession has been opened and is under administration for her deceased daughter or that she had been appointed as the succession representative ... she lack[ed] the procedural capacity to file a suit in a representative capacity." Id. , p. 6, 142 So.3d at 19. See also, Wells v. Fandal , 13-620, p. 14 (La. App. 5 Cir. 2/12/14), 136 So.3d 83, 85, writ denied , 14-0511 (La. 4/25/14), 138 So.3d 645 (Board of Directors and its unnamed secretary and treasurer were "not juridical person[s] and lack[ed] the requisite procedural capacity" to be sued, because Louisiana law defines "[a] juridical person [as] an entity to which the law attributes personality, such as a corporation or a partnership."); Bourbon Investments, LLC v. New Orleans Equity LLC , 15-1234 (La. App. 4 Cir. 12/21/16), 207 So.3d 1088, 1095 (because Louisiana law regarding limited liability companies requires "unanimous written consent of all current members ... to assume the full membership interests," including the transfer of membership interest, where only two of five members voted to file a lawsuit which, inter alia, challenged the transfer of membership interests, the trial court properly granted an exception of lack of procedural capacity); Alexander v. Town of Jeanerette , 371 So.2d 1245, 1247 (La. App. 3 Cir. 1979) (where, at the time of the suit, La.C.C.P. Article 683provided that the father of a minor child "is the proper plaintiff to sue to enforce a right of an unemancipated minor who is the legitimate issue of living parents who are not divorced or judicially separated," the trial court correctly sustained *792 an exception of lack of procedural capacity against the mother").
Given these examples of when an exception of lack of procedural capacity is applicable, it is clear that the exception does not apply here. There can be no doubt that the Insurers have procedural capacity in this litigation and there is nothing in the record which warrants the trial court's grant of Rain's exception of lack of procedural capacity has merit.
I do recognize that, although they involve entirely different objections, have different classifications,[2] and have different filing requirements,[3] some courts have treated a party's exception of lack of procedural capacity as an exception of no right of action, particularly when the only objection raised concerns procedural capacity. See , e.g. , Sivils v. Mitchell , 96-2528, n.1 (La. App. 1 Cir. 11/7/97), 704 So.2d 25, 27 ("[w]e will treat the 'lack [of] procedural capacity to [sue]' objection as a peremptory exception raising the objection of no right of action.").[4] Conversely, some courts have treated exceptions of no right of action as exceptions of lack of procedural capacity. See , e.g. , Williamson-Dickie Apparel Mfg. Co. v. Hanger, Inc. , 422 So.2d 602, 605 (La. App. 3 Cir. 1982) ; Jackson v. Dickens , 236 So.2d 81, 83 (La. App. 1 Cir.1970). In my opinion, even if this Court were to treat the trial court's judgment as a grant of an exception of no right of action, that judgment, too, would be in error.
Our jurisprudence is well-settled that "[t]he essential function of an exception of no right of action is to test whether the plaintiff has a real and actual interest in the action." Wirthman-Tag Const. Co. v. Hotard , 00-2298, p. 2 (La. App. 4 Cir. 12/19/01), 804 So.2d 856, 859 ; Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission , 94-2015, p. 4 (La. 11/30/94), 646 So.2d 885, 888. That is, "[t]he peremptory exception of no right of action questions whether the party against whom it is asserted has an interest in judicially enforcing the right alleged against the exceptor." Recovery Dev. Grp., LLC, Next Generation Homes, LLC v. Nat'l Baptist Convention of Am., Inc. , 10-1086, p. 10 (La. App. 4 Cir. 4/20/11), 63 So.3d 1127, 1132-33 (quoting Touzet v. V.S.M. Seafood Services, Inc. , 96-0225, p. 2 (La. App. 4 Cir. 3/27/96), 672 So.2d 1011, 1012 ).
Here, it cannot seriously be contested that the Insurers do not have a real or actual interest in the matter before the trial court. Even a cursory examination of Rain's pleadings clearly establishes that the only parties with an actual or real interest in the proceeding to confirm the arbitration award are the Insurers. Virtually everything in the record supports this finding. Rain's motion to confirm the arbitration award, with all of its attachments, alone, makes clear that the sole object of the arbitration was Rain's interest in the Insurers' insurance policies.
Rain instituted the action in the 14th JDC against all parties. For reasons which are unclear from the record, the arbitration proceeding was then invoked in Orleans Parish, thereby conferring venue in Orleans Parish for a proceeding to confirm *793 the award under La. R.S. 9:4209.[5] Although the majority notes that "Rain arbitrated its claims against ReCon at a final hearing on September 28, 2017 in New Orleans," the majority fails to note that Rain had already settled all if its claims against ReCon in December, 2016, and its professional liability insurer, XL Specialty Insurance Company.
The December 6, 2016 order dismissing ReCon provided that:
- ReCon was dismissed, "with prejudice, only from any and all uninsured liability and from any and all liability covered by and within the limits" of" XL's policy";
- Rain "shall not execute against ReCon any uninsured or unrecoverable portion(s) of any potential judgment entered against ReCon";
- "ReCon shall remain a defendant solely to satisfy Louisiana's Direct Action Statute, La. R.S. § 22:1269, in order to preserve [Rain's] reserved right to proceed against ReCon solely to the extent of any other available insurance through any non-settling insurer, and ReCon shall not face any uninsured exposure."
Until that settlement with ReCon and XL in 2016, Rain was actively engaged in litigation in the 14th JDC, during which time, the trial court dismissed the Insurers on an exception of no right of action because Rain's claims were contractual in nature. The Insurers remained in the case by virtue of a fourth amended petition, filed on November 22, 2016, after the Insurers had been dismissed, but before the appeal of their dismissal was decided.[6]
The fourth amended petition evidences an obvious effort by Rain to keep the Insurers in the lawsuit by restating the nature of its claims against ReCon so as to eliminate all claims which were contractual in nature. These machinations were clearly designed to eliminate those claims against ReCon which would not be covered by the Insurers' policies (and for which the trial court already determined there was no coverage) and to assert altogether new theories of recovery from ReCon for which coverage under those policies could potentially be triggered. At this point, ReCon had been dismissed in its entirety, with the exception of those claims for which the Insurers' policies could potentially provide coverage. That Rain had no further genuine interest in its claims against ReCon is clear from its dismissal of ReCon with the provision that it would not "execute against ReCon any uninsured liability" and its admission in its First Amended Statement of Claims that ReCon had "assigned and transferred to Rain all proceeds, payments, ... and amounts due under the Policies for all post-loss claims and causes of action that arose out of the Project." As such, as Rain alleged, Rain is the "assignee standing in the shoes of ReCon" and was asserting "claims for coverage under the Policies." For Rain to now claim that the Insurers have no real or actual interest in these proceedings is disingenuous, at best.
*794 I would also note that the Insurers filed their exception to Rain's fourth amended petition in May, 2018. Shortly thereafter, rather than addressing those exceptions in the 14th JDC, Rain proceeded to schedule the arbitration hearing by providing notice on July 18, 2018, to ReCon (alone) of the hearing date, knowing full well that ReCon, a party with no exposure whatsoever, would not be participating in the hearing.
With respect to the Insurers' right of action to intervene in Rain's lawsuit to confirm the arbitration award, our jurisprudence indicates that this issue is "directed to the question of whether [the intervenor] has a justiciable right sufficiently connected to the main demand upon which to base [its] intervention." Interdiction of Zimmer , 17-0900, pp. 4-5 (La. App. 4 Cir. 3/14/18), 242 So.3d 669, 672.[7] In my opinion, the Insurers have a justiciable right in this case which is clearly connected to the main demand. Indeed,:
[a]n intervention under La. C.C.P. art. 1091 is the proper procedural vehicle for a nonparty to join the litigation. Only a nonparty, i.e. , a third person, has standing to intervene under La. C.C.P. art. 1091. See Mexic v. Mexic , 00-1274, p. 5 (La. App. 1 Cir. 6/22/01), 808 So.2d 685, 689 (finding it "procedurally incorrect" for a party defendant to file a petition of intervention); Norris v. Allstate Ins. Co. , 293 So.2d 918, 922 (La. App. 3rd Cir.1974) (finding that "Allstate being a defendant, it cannot intervene.") The intervenor is the nonparty who "seeks admission as a party to protect an interest or enforce a right related to or connected with the object of the pending action." Hon. S. Plotkin & M. Akin, 1 La. Prac. Civ. Proc. Art. 1091 (2012).
St. Pierre v. Northrop Grumman Shipbuilding, Inc. , 12-0545, pp. 10-11 (La. App. 4 Cir. 10/24/12), 102 So.3d 1003, 1011.
Here, there can be no doubt that Rain's plan was to obtain an arbitration award against a non-represented party which no longer had any interest in the matter and to confirm that award so that it would have res judicata effect. See Montelepre v. Waring Architects , 00-0671, p. 4 (La. App. 4 Cir. 5/16/01), 787 So.2d 1127, 1130 ("an arbitration award is res judicata."); Craig v. Adams Interiors, Inc. , 34,591 (La. App. 2 Cir. 4/6/01), 785 So.2d 997, 1001 ("[a]n arbitration award carries the same res judicata effect as a judgment."). Likewise, there can be no doubt that Rain would then seek to execute that arbitration award against the Insurers. There is no question, therefore, that the Insurers have the right to intervene in the action to either protect their interests or to enforce their rights clearly connected with the object of Rain's motion to confirm the arbitration. I would find that the trial court erred in holding otherwise.[8]
Based on the foregoing, I am of the opinion that because the trial court erred in granting the exception of lack of procedural capacity, and that the Insurers had both the capacity to intervene in the action and a right of action, the trial court prematurely ruled on the motion to confirm the arbitration award. I would, therefore, reverse the judgment sustaining the exception of lack of procedural capacity and *795 would further vacate the judgment confirming the arbitration award.

For further background and a more detailed procedural history of the events preceding the present appeal, one may consult Rain CII Carbon, LLC v. Turner Indus. Grp., LLC, 17-223, unpub., (La.App. 3 Cir. 4/5/17), 2017 WL 1279653.

While Imperium was named in an amending petition, it was not included in any subsequent pleadings.

An arbitrator that decides jurisdictional questions

La. R.S. 9:4201 et seq.

9 U.S.C. §§ 1 et seq.

It would also be true that the insurers had no right of action rather than no procedural capacity. See Sivils v. Mitchell, 96-2528 (La.App. 1 Cir. 11/7/97), 704 So.2d 25, 27.

I note that there were numerous matters heard by the trial court at the July 6, 2018 hearing, including Rain's exceptions of no right of action, no cause of action, prescription and Motion for Protective Order. Numerous exceptions and motions of the Insurers were also considered at the hearing. The trial court's judgment, however, only granted Rain's exception of lack of procedural capacity (which it found rendered Rain's other exceptions moot, denied the Insurers' motions as moot and granted the Motion to Confirm Arbitration Award).

The exception of lack of procedural capacity is dilatory, while the exception of no right of action is peremptory.

An exception of lack of capacity is waived if not raised timely, while an exception of no right of action may be raised at any time. See La. C.C.P. art. 928.

Unlike the Sivils case, in the instant matter, Rain raised both exceptions of lack of procedural capacity and no right of action.

La. R.S. 9:4209 provides, in pertinent part that "[a]t any time within one year after the award is made any party to the arbitration may apply to the court in and for the parish within which the award was made for an order confirming the award ...."

In Rain CII Carbon LLC v. Turner Indus. Grp., LLC , 17-223, unpub., (La. App. 3 Cir. 4/5/17), 2017 WL 1279653 at *1, an appeal Rain took with respect to the trial court's grant of the Insurers' exception of no right of action, the trial court found that Rain had no right of action against the insurers, as the pleadings reflected that all of "Rain's claims against ReCon (the Insured) arose solely out of contractual obligations," dismissing, with prejudice, all of the claims against the Insurers."

When an exception is based upon 'the lack of connexity between the intervention and the principal demand, the proper exception is one raising the objection of no right of action.' " Id. ,p. 5, 242 So.3d at 672 (quoting IberiaBank v. Live Oak Circle Dev., L.L.C. , 12-1636, p. 6 (La. App. 1 Cir. 5/13/13), 118 So.3d 27, 31 ).

Again, we note that the trial court's judgment granted Rain's exception of lack of procedural capacity. The same result is reached in treating the judgment as a grant of an exception of no right of action.